# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### February 10, 2016 Session

## ROGELYNN EMORY v. MEMPHIS CITY SCHOOLS BOARD OF EDUCATION, NOW KNOWN AS SHELBY COUNTY BOARD OF EDUCATION

### Appeal by Permission from the Court of Appeals
### Chancery Court for Shelby County
### No. CH062420      Walter L. Evans, Chancellor

_____

### No. W2014-01293-SC-R11-CV – Filed January 13, 2017

_____


This case arises out of the termination of a tenured teacher. After a three-day hearing, the school board concluded that there was ample evidence of the teacher's unsatisfactory job performance, so it terminated her employment. In the trial court review of the school board's decision, the teacher argued that she should be reinstated with back pay because her school board hearing occurred well beyond the thirty-day period set forth in the Teachers' Tenure Act. The trial court affirmed the termination and the teacher appealed. The Court of Appeals declined to reinstate the teacher based on the untimeliness of the school board hearing but it awarded her partial back pay. On appeal, we first clarify the standard of judicial review for the termination of a tenured teacher under the Tenure Act. Second, we reverse the Court of Appeals' award of partial back pay to the teacher because the relief ordered is without basis in the Tenure Act. Finally, because the teacher failed to raise to the school board any objection as to the timeliness of her hearing, we hold that the issue is not properly before this Court. Accordingly, we affirm the trial court's decision to uphold the termination of the teacher's employment.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Court of Appeals Reversed; Judgment of the Trial Court Affirmed

HOLLY KIRBY, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK and SHARON G. LEE, J.J., joined.

Jeff Weintraub, Memphis, Tennessee, for the appellant, Shelby County Board of Education

Mark Allen, Memphis, Tennessee, for the appellee, Rogelynn Sue Emory

## OPINION
### FACTUAL AND PROCEDURAL BACKGROUND

Rogelynn Emory began working full-time as a teacher in the Memphis City School System[1] in 1977 and eventually attained tenured status. Ms. Emory was certified to teach French, English and Social Studies, and she was also certified in Administration. During her career with Memphis City Schools, Ms. Emory taught French and/or English at a number of different high schools in Memphis.[2]

During the 1996-1997 school year, Ms. Emory began exhibiting unusual stress while at school. She had trouble managing her fears and emotions when instructing students, which in turn led to difficulty controlling her classroom. Written evaluations and witness testimony indicated that, during that time, Ms. Emory's classroom instruction was poor and she did not give proper attention to student needs and differences. Her behavior became increasingly erratic and irrational, and administrative attempts to help her were unavailing. Her psychiatrist diagnosed her with post-traumatic stress disorder and paranoia. Eventually, in April 1999, Ms. Emory was placed on indefinite leave to seek medical attention. She stayed on leave for several years.

In 2003, Ms. Emory's medical leave ended. She resumed teaching in the Memphis City School System in November 2003. However, despite the end of her medical leave, Ms. Emory's problems persisted.

During the 2004-2005 school year, Ms. Emory taught eleventh-grade English at Central High School in Memphis. Early in the school year, Central High principal Greg McCullough observed that there was very little learning going on in Ms. Emory's classes. He saw "major classroom management issues," to the point that he viewed her class as "out of control." Ms. Emory repeatedly called the administrative office for classroom help on problems that a seasoned teacher should have been able to handle, such as classroom noise. She displayed a low level of teaching skill even during planned classroom observation. From Mr. McCullough's vantage point, the students did not appear to be the issue. All five of Ms. Emory's classes had disruption and chaos, but other teachers with the same students in their classes experienced far fewer problems.

---

[1] The Memphis City School System is now known as the Shelby County School System.

[2] During her career, Ms. Emory taught at the following schools: Melrose High School, Kingsbury High School, Hillcrest High School, Treadwell High School, and Central High School.

Mr. McCullough felt that the problems were Ms. Emory's poor classroom management and her low level teaching skills.

Repeated administrative attempts to assist Ms. Emory and help her improve proved futile. She blamed her difficulties on students and the administration and was not receptive to either advice or assistance. Ultimately, Mr. McCullough recommended that the Memphis City Schools Board of Education (the "Board") terminate Ms. Emory's employment at the end of the school year.

After receiving Mr. McCullough's recommendation, the Superintendent of the Memphis City Schools, Dr. Carol Johnson, initiated termination proceedings pursuant to the Teachers' Tenure Act ("Tenure Act"), codified at Tennessee Code Annotated sections 49-5-501 to -515 (2006).[3] In a letter to the Board dated September 20, 2005, Dr. Johnson set out Ms. Emory's troubled employment history with the school system and her unsatisfactory job performance dating back to the 1996-1997 school year.[4] Under the

---

[3] The Tenure Act has been significantly amended since the events in this case occurred. For purposes of this opinion, we apply the Tenure Act as codified in 2005 and 2006.

[4] The text of the letter reads as follows:

Dear Ladies and Gentlemen:
    Ms. Rogelynn Emory has been an employee of the Memphis City School System since October 7, 1976, when she was hired as a substitute teacher. She was given an interim position at Melrose High School from 1977-1979 and received a regular teaching position beginning in the 1979-80 school year at Kingsbury High School. She was transferred to Hillcrest High School in July 1983 and Treadwell High School in October of 1998. After unsatisfactory performance at both Hillcrest and Treadwell, she was given a final opportunity to succeed at Central High School beginning November 5, 2003. For the reasons given below, her performance at Central High School has also been unacceptable and her termination is recommended. Throughout her career, Ms. Emory has taught French and/or English at the high school level.

    Since at least the 1996-97 school year at Hillcrest and continuing to the present through her assignments at Treadwell and Central, Ms. Emory has displayed an ongoing inability to control her classes and to control her own fears and emotions when dealing with her classes. At Hillcrest, she created bad relationships with her students by referring to them as criminals and drug users. On one occasion, she called 911 to seek to have the police come to the school because she had been hit on the hand by a penny. She refused counsel and advice from the principal, Mr. Sammy B. Hall, and ultimately Mr. Hall requested that she be transferred.

    At Treadwell, Ms. Emory repeated her disruptive class pattern of conduct and her lack of classroom control. At Treadwell, she was given an assignment, French I and II and to a seventh grade honors English class. Both previous teachers of these classes and

- 3 -

the substitute who had been teaching them prior to Ms. Emory's arrival had not experienced disciplinary problems[,] and in fact these were very desirable assignments. To the amazement of the school Principal, Ms. Emory, at the outset of her teaching at Treadwell, began to berate her classes and tell them that "She did not come to Treadwell to die." She remained irrational when the principal, Mr. John L. Malone, PhD., tried [to] calm and correct her.

A similar pattern of conduct continued at Treadwell with Ms. Emory complaining that students were criminals and were running over her. Minor incidents would lead to hysteria, and very little learning [was] taking place in her classrooms because of the disruption and lack of control that she herself was creating. Her classrooms also showed poor preparation for instruction and poor attention to student needs and differences.

In an attempt to assist Ms. Emory, she was allowed leave time and an opportunity to receive professional attention for her problems with fear and lack of self-control. Also, at the request of her own physician she was given a transfer away from the Treadwell setting. She was allowed to teach at Central High School beginning November 5, 2003. Her problems of poor preparation and presentation and poor classroom management reasserted themselves at Central. At the observation of [the] Principal, she was hurting her high school English students because of her poor job performance. The principal, Mr. Gregg McCullough, exerted himself as much as possible to support and assist Ms. Emory. His office dealt with an excessive number of disciplinary referrals from Ms. Emory's classes. Mr. McCullough, like her previous principals, counseled with her and provided her with written plans of improvement, which she resisted and did not implement. Ms. Emory's classes at Central were frequently disrupted with persons not on task. On occasion, Ms. Emory would not even be aware that the principal had stopped at the door because of the disruption of her room. On other occasions, the students were obviously uninterested in the subject and very few even had their books open or materials out. Throughout her time at Central, her class was frequently out of control and no sign of learning or instruction was apparent. Mr. McCullough correctly concluded that this situation was not fair to the students and that continuing the pattern of unsatisfactory teaching and transfers was unfair to the system. He therefore recommended termination in which the Department of Human Resources and I strongly concur.

Based on the foregoing, it is my belief that Ms. Emory should be terminated for the following reason as stated in Tennessee Tenure Law: "Inefficiency" as defined in T.C.A. §49-5-501(5): "Being below the standards of efficiency maintained by others currently employed by the Board for similar work; habitually tardy, inaccurate, or wanting in effective performance of duties.

It is requested that the Board review this letter pursuant to T.C.A. §49-5-511 and determine that the charges are of such nature as to warrant the dismissal of the teacher and direct that proceedings commence and notice be given under the Tennessee Tenure Law.

Respectfully submitted,

Tenure Act, Dr. Johnson recommended that the Board terminate Ms. Emory's employment on the ground of "inefficiency."[5]  *See* Tenn. Code Ann. § 49-5-511(a)(2).

In a letter dated September 30, 2005, Dr. Johnson notified Ms. Emory of the charges against her.  The letter attached a statement of Ms. Emory's rights under the Tenure Act and a copy of the written charges against her.  It informed Ms. Emory that she had thirty days to request a hearing before the Board on the charges.

In a letter to Dr. Johnson dated October 18, 2005, Ms. Emory requested a hearing before the Board on the charges against her.  The letter included the name and contact information for Ms. Emory's Tennessee Education Association attorney and asked Dr. Johnson to contact her attorney to determine "a mutually agreeable date for a hearing."  A stamp on the letter indicates that it was received by the Superintendent's office on October 20, 2005.

In a letter dated November 11, 2005, the Director of the Memphis City Schools Division of Labor and Employee Relations, James Davis,  acknowledged receipt of Ms. Emory's request for a tenure hearing.  Mr. Davis said in the letter that he would "get some dates that the Board Commissioners are available to hear your case and advise you of when the hearing is scheduled."

On April 7, 2006, Tennessee Education Association attorney Virginia McCoy sent a letter to the Memphis City School System, notifying them that she was replacing Ms. Emory's prior attorney.

### Board Hearing

On November 1, 2, and 8, 2006, the Board conducted a three-day hearing on Ms. Emory's appeal of the charges against her.  Ms. Emory was represented by Ms. McCoy, who is not the attorney of record in this appeal.

---

Dr. Carol R. Johnson
Superintendent

[5] As discussed below, Section 49-5-501(a)(2) provides that a tenured teacher may be dismissed or suspended for "incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination . . . ."  "Inefficiency" is defined as "being below the standards of efficiency maintained by others currently employed by the board for similar work, or habitually tardy, inaccurate, or wanting in effective performance of duties."  Tenn. Code Ann. § 49-5-501 (2006.)

At the hearing, Mr. McCullough testified about his observations regarding Ms. Emory's teaching difficulties, outlined above. The Board also proffered the testimony of Central High's assistant principal, Gary Steverson, who observed similar problems with Ms. Emory's teaching. One of Mr. Steverson's main areas of responsibility was student discipline, and he said that Ms. Emory got the administration involved in disciplinary issues in her classroom nearly every day. He testified that the administration had received complaints from some students and parents that the students in Ms. Emory's classes were not getting what they needed for college preparation. Ms. Emory did not indicate to Mr. Steverson that emotional or mental problems contributed to her classroom issues. Despite administrative efforts to help Ms. Emory, Mr. Steverson said, her job performance got progressively worse over the course of the school year.

The Board also offered testimony from other school administrators and other teachers who worked with Ms. Emory after her return from medical leave. They corroborated the testimony from Principal McCullough and Assistant Principal Steverson regarding Ms. Emory's poor classroom management, lack of teaching skills, and unwillingness or inability to receive constructive criticism and improve, and supported the written charges against Ms. Emory.

In response, Ms. Emory presented the testimony of several witnesses. Alberta Hardaway taught with Ms. Emory at Central High School. She testified that Ms. Emory was "great" at explaining the lessons to students; she said that Ms. Emory was very knowledgeable and felt that she could be an effective teacher. Roosevelt Hancock, Jr. was an assistant principal at Hillcrest while Ms. Emory taught there. Mr. Hancock testified that Ms. Emory "did her job" teaching classes "without anything out of order" but had students "who did not want to adhere" to the rules. However, Mr. Hancock conceded that Ms. Emory had only partial control over her classroom, and he acknowledged that this was not sufficient. Fellow Hillcrest foreign language teacher Diane Noyes described Ms. Emory as an excellent, conscientious teacher who "tried her best to teach these children." However, both Ms. Noyes and Mr. Hancock had heard Ms. Emory refer to her students as "criminals."

Ms. Emory testified as well. In her testimony, Ms. Emory described incidents dating back to the 1990s involving student behavior that was upsetting or even traumatic for her.[6] She testified about numerous grievances after she returned from medical leave, stemming either from student misconduct or administrative admonitions that she believed were without basis. Nevertheless, in response to a Board member's question, Ms. Emory

---

[6] In her testimony, Ms. Emory described students throwing things at her, such as pencils, coins, and once a book. She repeatedly referred to herself as "a battered teacher."

maintained that she had no lingering psychological effects from all of these incidents. She insisted that she was an effective teacher and that she wanted to continue teaching.

At the close of the proof, the Board deliberated at some length. After deliberation, the Board voted unanimously to sustain Ms. Emory's dismissal and to adopt the findings as set forth in the written notice of charges. On November 9, 2006, the Board terminated Ms. Emory from her tenured position.

## Chancery Court Proceedings

In December 2006, Ms. Emory, representing herself, filed a "Petition for Judicial Review" in the Chancery Court of Shelby County seeking judicial review of the Board's decision. The petition alleged that the Board violated Tennessee Code Annotated section 49-5-512 by failing to hold her hearing within thirty days from receipt of her letter demanding a hearing, that the dismissal was in retaliation for unrelated litigation she had initiated, and that the Board's decision was arbitrary and capricious.

For reasons that do not appear in the record, there was no activity in the case for two years. In October 2008, the Board's attorney filed a notice of appearance. The record contains no further action by either party for over two years thereafter, until it was finally dismissed for lack of prosecution in April 2011. Shortly after the dismissal for lack of prosecution, Ms. Emory's new attorney, her counsel in this appeal, filed a notice of appearance. The trial court then set aside its order dismissing the case.

In June 2013, the trial court held a hearing on Ms. Emory's petition. At the hearing, Ms. Emory took the position that the Board's decision was arbitrary and capricious. She sought to present additional evidence regarding her contention that the Board violated Tennessee Code Annotated section 49-5-512(a)(2) by not providing Ms. Emory with a hearing within the required 30-day period. Once the thirty-day period for Ms. Emory's Board hearing lapsed, she contended, the Board lost jurisdiction to terminate Ms. Emory's employment. At that point, Ms. Emory argued, in order to terminate her employment, the Board was required to re-issue its notice of the charges and start the termination process over.[7] She asked the trial court to permit her to submit

---

[7] Ms. Emory also argued that her termination was due to a disability. The Board contended that any argument regarding an alleged disability was improper because the case was not a disability discrimination lawsuit. The Board also noted that any argument to the effect that Ms. Emory was disabled and needed accommodation was at odds with her Board testimony that she had no mental infirmities and was ready and able to work. In this appeal, Ms. Emory raises no issues regarding these allegations, so we do not address them.

additional evidence, order reinstatement, and award Ms. Emory back pay dating back to the date of her suspension.

In response, the Board noted that Ms. Emory was represented by counsel in the Board hearing, and it observed that she received a multi-day hearing with numerous witnesses and exhibits and ample opportunity to put on her own proof. The Board pointed to overwhelming proof supporting its decision to terminate Ms. Emory's employment, demonstrating that it was neither arbitrary nor capricious. It opposed the introduction of any evidence that was not before the Board in its hearing. The Board emphasized that, over the course of the entire Board hearing, neither Ms. Emory nor her counsel raised the issue of the delay. The Board attorney, who had participated in the Board hearing, explained to the trial court that the delay in the termination hearing was consensual and was the result of the parties' joint effort to balance the schedules of the many persons required to participate in the hearing, including the attorneys and the citizen Board members.[8] The Board argued that Ms. Emory was not entitled to relief because she could not show that the delay prejudiced her right to a full and fair hearing.

---

[8] During the Board's hearing, the parties' lawyers and the Board discussed the scheduling of the hearing, the length of the hearing and the efforts of the Board to give Ms. Emory a full hearing:

MS. McCOY: These were the Board's dates.

DR. JOHNSON: I understand that, but every night you schedule, they are going -- this is a working board. I just need for people to understand, they work very hard, they're at something almost every night. And so I just feel like I need to say that because I think people think of this as a job, that people just come and go and this Board doesn't.

They are very committed to hearing, but I think that at some point -- they do start very early with meetings and they go very late and so -- and almost everybody at the table has another full-time real job.

At the trial court hearing, the Board's attorney repeatedly indicated that the delay in setting the Board hearing was consensual. He stated:

I've done a number of those hearings over the past years, Your Honor, none of them have ever been within 30 days. It's a fact of which the Board is aware. It's a fact of which the TEA is aware, and the teachers are aware.

It can't be done. Our Board members work during the day, so they have to find times to meet at night. We have to work with the teacher and with the teacher's attorney, the TEA, my schedule or whoever is handling the hearing, all that has to be worked out. It's done consensually. I was involved in that one. I know that's what happened here.

In response to questions from the trial court, Ms. Emory's counsel said that, even if the date of the hearing had been consensual, he'd seen no documents stating that it was. Also in response to the trial court's inquiry, Ms. Emory's attorney conceded that the delay had no effect on the outcome of the hearing. Regardless of prejudice, Ms. Emory insisted, the Tenure Act clearly required a hearing within thirty days and Ms. Emory's hearing was not held in thirty days; so, she was entitled to reinstatement.

The trial court permitted Ms. Emory's counsel to make an offer of proof, which consisted of the additional documents he asked the trial court to consider. The Board's attorney submitted several documents as well, and the parties stipulated as to the authenticity of all of the additional documents. However, the Board maintained that any delay in conducting the hearing was harmless error, so it asked the trial court not to consider anything outside of the record that was before the Board. Both parties were asked to submit proposed findings of fact and conclusions of law. The trial court then took the matter under advisement.

In late October of 2013, the trial court entered an order affirming the Board's decision. In a separate statement of factual findings and conclusions of law, the trial court set out at length the evidence presented by both parties at the Board hearing. It noted that, during the Board hearing, Ms. Emory "did not complain about her hearing being untimely or about any prejudice to her caused by its delay." The court concluded that the testimony before the Board "demonstrated that [Ms. Emory] had severe deficiencies in her teaching ability, which includes classroom-management skills, for several years." It deemed the evidence "more than sufficient" to support the Board's conclusion that Ms. Emory's teaching skill was below the required standard and to justify its decision to terminate her employment.

As to the Board's delay in conducting the hearing, the trial court noted that Ms. Emory had notice and an opportunity to be heard. It stated, "The fact that the hearing before the Board occurred beyond the statutory 30-day period did not affect Ms. Emory's substantial rights. . . . [V]iolations of procedural aspects of the tenure law do not entitle a plaintiff to damages if the termination was justified." It cited federal cases to the effect that a deprivation of procedural due process would entitle a terminated teacher to substantive relief only if the teacher showed that she was damaged by the procedural violation. The trial court distinguished *Thompson v. Memphis City Schools*, 395 S.W.3d 616 (Tenn. 2012), on the basis that, in that case, the noncompliance with the Tenure Act was so extensive that it amounted to a violation of the teacher's substantive rights. The trial court added: "There is no evidence in the record that [Ms. Emory] objected or did not consent to the date chosen for the hearing. [Ms. Emory] concedes that she has not been harmed or prejudiced by the delay of the hearing."

- 9 -

In November 2013, Ms. Emory filed a motion to alter or amend the trial court's judgment. Ms. Emory's attorney noted that the findings of fact and conclusions of law did not refer to the additional exhibits submitted to the trial court, and he sought to clarify whether the trial court had considered them. He reiterated the argument that the Board violated the Tenure Act by failing to give Ms. Emory a hearing within 30 days of her request and contended that the remedy was for the Board to reinstate her. He conceded that the Board could immediately reinstitute the charges against Ms. Emory but felt that doing so would permit him to pursue a more effective strategy in the new hearing.

In response to the trial court's question about the delay, Ms. Emory's counsel said, "[Ms. Emory] had counsel . . . . She was represented by [Memphis Education Association] . . . like most every other teacher. I don't know why it got put off. I wasn't representing her. . . . I don't know what happened." He asserted, "I don't know why [Ms. Emory's] counsel didn't say anything at the [Board] hearing about [the delay], but I don't think counsel had to because . . . the mandates of the Tennessee [Tenure] Act are clear, they have to [hold the hearing] within . . . 30 days." After Ms. Emory's counsel conceded that her attorney did not raise the delay as an issue before the Board, the trial court asked him about "present[ing] a new [issue] in the, in the chancery court where it was not raised before the board?" Ms. Emory's counsel claimed:

> I get to do that. It's a de novo hearing, Judge. I get to raise a legal question right now that's never been raised before . . . the school board. . . . I can't raise it in the Court of Appeals, but I have to raise it to you. And that's what I'm doing.

At the conclusion of the hearing on the motion to alter or amend, the trial court reiterated that the record before the Board supported the decision to terminate. It stated:

> [T]he primary and moving concern that [Ms. Emory] has at this point is that it took 300 something days from her termination day for her to have a hearing. But notwithstanding the extensive time that it took to bring the matter to a hearing, the issue of the delay was never considered by . . . the board.

The trial court concluded that Ms. Emory had not established that, "had that issue been presented," the result would have been different. It allowed the additional documents to be part of the record but said that Ms. Emory had not shown that they would have changed the outcome. The trial court denied the motion to alter or amend. Ms. Emory appealed.

- 10 -

# Court of Appeals Decision

On appeal, the Court of Appeals indicated that the trial court had mischaracterized Ms. Emory's claim as based on an alleged deprivation of procedural due process. *Emory v. Memphis City Sch. Bd. of Educ.*, No. W2014-01293-COA-R3-CV, 2015 WL 1934397, at *3-4 (Tenn. Ct. App. Apr. 29, 2015), *perm. app. granted* (Sept. 18, 2015). It noted that the Tenure Act provides greater protections to teachers than the minimal constitutional due process requirements, and it framed the issue as whether Ms. Emory received the statutory protections afforded her under the Tenure Act. *Id.* at *4.

After discussing *Thompson* at length, the Court of Appeals turned to the question of whether the statutory provision requiring the Board to conduct its hearing within thirty days of the teacher's demand is "mandatory" or "directory." *Id.* at *4-7 (citing Tenn. Code Ann. § 49-5-512(a)(2); *Thompson*, 395 S.W.3d at 618-630). It acknowledged that the statute uses the word "shall" in connection with the thirty-day period for the hearing but noted that statutory requirements related to the time for performing an act may be construed as directory rather than mandatory. *Id.* at *6. It noted that the primary purpose of the Tenure Act is to protect teachers from arbitrary dismissals and that the essential purpose of section 49-5-512 is "to ensure that tenured teachers are provided a full and fair pre-termination hearing." *Id.* at *7. The time requirement for the hearing, it held, is not "fundamental" to the statute. It also observed that the statute contains no language indicating that "the failure to provide a hearing within the specified time period renders the proceedings void." *Id.* Accordingly, the Court of Appeals held that the "timely hearing requirement in Section 49-5-512(a)(2) is directory rather than mandatory." *Id.*

At that point, the appellate court expressed concern that its holding that the thirty-day hearing provision is directory rather than mandatory, coupled with the absence of any penalty for a failure to hold the hearing within thirty days, "could render the provision meaningless." *Id.* It declined to rule that the Board's failure to hold Ms. Emory's hearing within thirty days rendered the Board's proceedings void, but it felt that "some sanction . . . is necessary." *Id.* The appellate court noted that "the only prejudice Ms. Emory suffered as a result of the delayed hearing is that she was suspended without pay following her demand for a hearing for a number of days that exceeded the statutory limit." *Id.* "Accordingly," it held, "the proper remedy is an award of back pay for the additional days that Ms. Emory was suspended without pay and without a hearing in violation of the Tenure Act." *Id.* The Court of Appeals then reversed the judgment of the trial court and remanded the case to the trial court to determine the amount of back pay to which Ms. Emory was entitled. *Id.*

- 11 -

Both parties filed applications for permission to appeal to this Court. We accepted both applications.

## ISSUES ON APPEAL

On appeal, the Shelby County Board of Education raises the following issue: "Whether the Court of Appeals erred in holding that Ms. Emory was entitled to back pay when the Tenure Act does not prescribe an award of back pay when a tenured teacher, who has been terminated, does not receive a tenure hearing within 30 days of requesting it?"

Ms. Emory also challenges the remedy crafted by the Court of Appeals, but, not surprisingly, frames the issue differently: "Does the Court of Appeals have the authority under the Tenure Act to award partial back pay where Tenn. Code Ann. § 49-5-511(a)(3) requires an award of full salary without offset?" In addition, Ms. Emory raises three more issues:

(1) Whether the Tenure Act's provision at Tenn. Code Ann. § 49-5-512(a)(2) requiring that a hearing for a suspended or dismissed teacher "shall not" be set later than 30 days following the receipt of the demand for a hearing is mandatory?

(2) Whether the Tenure Act at Tenn. Code Ann. § 49-5-511(a)(1) prohibits the discharge of a tenured teacher when there is a violation of Tenn. Code Ann. § 49-5-512(a)(2)?

(3) Whether the Appellee is entitled to reinstatement and full back pay under the Tenure Act?

## STANDARD OF REVIEW

Tennessee Code Annotated section 49-5-513 affords a tenured teacher whose employment has been terminated by a school board the right to judicial review of the school board's decision. Opinions from our intermediate courts have differed somewhat on the scope of the trial court's review. *See*, *e.g.*, *Ripley v. Anderson Co. Bd. of Educ.*, 293 S.W.3d 154, 156 (Tenn. Ct. App. 2008) (citing *Lee v. Franklin Special Sch. Dist. Bd. of Educ.*, 237 S.W.3d 322, 329 (Tenn. Ct. App. 2007)) ("The chancery court's review, as contemplated by this statute, is a de novo review wherein the chancery court does not attach a presumption of correctness to the school board's findings of fact, nor is it confined to deciding whether the evidence preponderates in favor of the school board's determination."); *cf. Smith v. Williams*, No. 01A01-9409CH00431, 1995 WL 498723, at

*4 (Tenn. Ct. App. Aug. 23, 1995) (citing *Goodwin v. Metro. Bd. of Health*, 656 S.W.2d 383, 387 (Tenn. App. 1983) ("Judicial review of a teacher dismissal case pursuant to T.C.A. § 49-5-513 requires the chancery court to review the transcript of the hearing before the board in order to determine whether there was any material evidence to support the board's decision. If there is, it is the responsibility of the trial court to affirm. On the question of whether the Board acted arbitrarily, capriciously or illegally, the trial court may hear new evidence and must make independent findings in this regard. Our scope of review on appeal from chancery court is no greater than that court's review of the Board decision."). We will endeavor to clarify.

Prior to 1992, the Tenure Act made no provision for a record of the school board's hearing in a teacher dismissal case. The Act provided that, in the chancery court's review of a school board's decision, "[t]he hearing shall be de novo and may be on deposition and interrogatories, or on oral testimony." *Cooper v. Williamson Cnty. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987) (alteration in original) (quoting Tenn. Code Ann. § 49-5-513(g) as of 1986). In *Cooper*, this Court discussed the difference between the common law writ of certiorari and the statutory writ of certiorari, broadly recognizing:

[T]he distinction between the writ of certiorari as employed under the common law, for the review of the legality of the action of a board or inferior tribunal as within its jurisdiction or powers, and the same writ authorized by statute to be employed, in lieu of an appeal, to review and correct errors of fact and law committed by such inferior tribunal.

*Id.* (quoting *Anderson v. City of Memphis*, 72 S.W.2d 1059, 1060 (Tenn. 1934). It held that the Teacher Tenure Act, as it existed at that time, set forth a "species of the statutory writ of certiorari" that required the chancery court to "redetermine both the facts and the law from all the evidence before the court." *Id*. at 179, 181.

In 1992, the legislature enacted comprehensive legislation related to education that included amendments to the Tenure Act. The amendments required that teachers be provided "a full, complete, and impartial hearing before the board, including the right to have evidence . . . included in the record of the hearing." The Teachers' Tenure Act, ch. 535, 1992 Tenn. Pub. Acts (amending Tenn. Code Ann. § 49-5-512). They also mandated the preparation of a record of the hearing and directed that all actions by the school board be "reduced to writing and included in the record, together with all evidence otherwise submitted." The Teachers' Tenure Act, ch. 535, 1992 Tenn. Pub. Acts (amending Tenn. Code Ann.§ 49-5-512(a)(7)).

- 13 -

The 1992 legislation also substantially changed the standard of judicial review of the school board's decision. It amended Tennessee Code Annotated section 49-5-513(g) to delete the above-quoted provision and substitute the following:

> The review of the court shall be limited to the written record of the hearing before the board and any evidence or exhibits submitted at such hearing. Additional evidence or testimony shall not be admitted except as to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board.

The Teachers' Tenure Act, ch. 535, 1992 Tenn. Pub. Acts (amending Tenn. Code Ann. § 49-5-513(g); *see also Wallace v. Mitchell*, 303 S.W.3d 685, 686-87 (Tenn. Ct. App. 2000) (noting the statutory change). Thus, the 1992 legislation changed the judicial review from a *de novo* hearing to a review of the written record of the school board hearing. The chancery court was given limited authority to admit additional evidence only if needed to establish that the school board acted arbitrarily or capriciously or that the school board violated the teacher's statutory or constitutional rights.

The language in the 1992 amendments to the Tenure Act clearly indicates that the legislature intended to establish the common law writ of certiorari as the standard of judicial review of the school board's decision to dismiss a tenured teacher. This Court has described the standard of review under the common law writ of certiorari:

> Generally, under common law certiorari, the scope of review is limited to the record to determine as a question of law whether there is any material evidence to support the agency's findings. However, new evidence is admissible on the issue of whether the administrative body exceeded its jurisdiction or acted illegally, capriciously or arbitrarily.

*Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983) (citations omitted).

Thus, in proceedings under a common law writ of certiorari, the intrinsic correctness of the decision of the lower tribunal—here the Board—is not subject to judicial review. The reviewing court may set aside the decision of the administrative body only if the reviewing court determines that the decision maker exceeded its jurisdiction; followed an unlawful procedure; acted illegally, arbitrarily, or capriciously; or acted without material evidence to support its decision. *See generally Davison*, 659 S.W.2d at 363; *Wallace*, 303 S.W.3d at 687. In reviewing the evidence before the school board, the standard of review for the trial court and for the appellate courts is the same. *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980).

This appeal also involves issues of statutory interpretation. These are questions of law, so we review the decisions of the lower courts *de novo* with no presumption of correctness. *Thompson v. Memphis City Sch. Bd. of Educ.*, 395 S.W.3d 616, 622 (Tenn. 2012).

## ANALYSIS

In *Thompson v. Memphis City Sch. Bd. of Ed.*, this Court set out the purposes of the Tenure Act and outlined the protections afforded to tenured teachers under the Act:

> [T]he Legislature enacted the Tenure Act in 1951. Act of Feb. 27, 1951, ch. 76, 1951 Tenn. Pub. Acts 292, 292-305. The primary purpose of the Tenure Act is "to protect school teachers from arbitrary demotions and dismissals." *Cooper v. Williamson Cnty. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987) (quoting *Snell v. Brothers*, 527 S.W.2d 114, 116 (Tenn. 1975)). The Tenure Act also affords "a measure of job security to those educators who have attained tenure status" and assures "efficient administration of the local educational systems of this State" by creating stability. *Ryan v. Anderson*, 481 S.W.2d 371, 374 (Tenn. 1972).
>
> The statute defines "tenure" as:
>
> > the statutory requirements, conditions, relations and provisions in this part, under which a teacher employed by a board holds a position as a teacher under the jurisdiction of the board.
>
> Tenn. Code Ann. § 49-5-501(11)(A). The Act creates two types of tenure — limited and permanent. *Id.* § 49-5-503. . . . Once attained, permanent tenure extends "until such time as the teacher . . . resigns, retires or is dismissed under [the] provisions of this part." *Id.* § 49-5-501(11)(C) (emphasis added). The Tenure Act declares in no uncertain terms that "[n]o teacher shall be dismissed or suspended except as provided in this part." *Id.* § 49-5-511(a)(1) (emphasis added).
>
> The five exclusive 'causes for which a teacher may be dismissed' are 'incompetence, inefficiency, neglect of duty, unprofessional conduct and insubordination as defined in § 49-5-501.' *Id.* § 49-5-511(a)(2). However, even if one of these causes is charged, certain procedures must be provided before a tenured teacher is dismissed. First, written charges must be presented to the board of education specifically stating an offense that

- 15 -

would amount to cause for the teacher's dismissal, and 'the charges shall be made in writing, specifically stating the offenses which are charged, and shall be signed by the party or parties making the charges.' *Id*. § 49-5-511(a)(4) (emphasis added). If the board of education determines that the "charges are of such nature as to warrant the dismissal of the teacher, the director of schools shall give the teacher" written notice of the board's decision, a copy of the charges against the teacher, and "a copy of a form which shall be provided by the commissioner of education advising the teacher as to the teacher's legal duties, rights and recourse under the terms of this part." *Id.* § 49-5-511(a)(5) (emphasis added). The teacher then "may, within thirty (30) days after receipt of notice, demand a hearing before the board" by giving "written notice to the director of schools of the teacher's request for a hearing." *Id.* § 49-5-512(a)(1) (emphasis added) . . . .

When a teacher demands a hearing before the board, "[t]he director of schools shall, within five (5) days after receipt of [the] request, indicate the place of such hearing and set a convenient date, which date shall not be later than thirty (30) days following receipt of [the] notice demanding a hearing." Tenn. Code Ann. § 49-5-512(a)(2) (emphasis added). "The teacher may appear at the hearing and plead the teacher's cause in person or by counsel." *Id.* § 49-5-512(a)(3). Additionally, the teacher "may present witnesses, and shall have full opportunity to present the teacher's contentions and to support them with evidence and argument." *Id.* at § 49-5-512(a)(4). The teacher must be provided a "full, complete, and impartial hearing before the board, including the right to have evidence deemed relevant by the teacher included in the record of the hearing, even if objected to by the person conducting the hearing." *Id.* The board chair conducting the hearing has the power to issue subpoenas, and both the teacher and the board may have subpoenas issued. *Id.* § 49-5-512(a)(5). All testimony must be given under oath, and either party may invoke the rule of sequestration for witnesses. *Id.* § 49-5-512(a)(6), (8). If an appeal is taken, a transcript or recording of the hearing must be prepared, and all actions of the board must be reduced to writing and included in the record. *Id.* § 49-5-512(a)(7). After the hearing, "[t]he board shall within ten (10) days decide what disposition to make of the case and shall immediately thereafter give the teacher written notice of its findings and decision." *Id.* § 49-5-512(a)(9). A tenured teacher "who is dismissed or suspended by action of the board" may then obtain judicial review by filing a petition for writ of certiorari within thirty days of the board's decision. *Id.* § 49-5-513(a)-(b).

*Thompson v. Memphis City Sch. Bd. of Educ.*, 395 S.W.3d 616, 623-24 (Tenn. 2012) (footnotes omitted) (emphasis removed).

Under the next provision of the Tenure Act, Tennessee Code Annotated section 49-5-513, a tenured teacher whose employment has been terminated may obtain judicial review of the termination. As noted above, the statute provides that the chancery court's review of the school board's decision "shall be limited to the written record of the hearing before the board and any evidence or exhibits submitted at the hearing. Additional evidence or testimony shall not be admitted except as to establish arbitrary or capricious action or violation of statutory or constitutional rights by the board." Tenn. Code Ann. § 49-5-513(g).

In this appeal, Ms. Emory asserts that the Board failed to abide by the provision in section 49-5-512 stating that the hearing before the school board shall be set no later than thirty days after receipt of the notice demanding a hearing. Tenn. Code Ann. § 49-5-512(a)(2).[9] Both parties argue that the relief awarded by the Court of Appeals has no basis in the Tenure Act. Ms. Emory contends that she is entitled to reinstatement and full back salary, and the Board argues that Ms. Emory suffered no prejudice from the time delay and thus is entitled to no relief at all.

We consider first the relief awarded by the Court of Appeals, and then address Ms. Emory's request for relief based on the statutory time provision.

### Relief Ordered by Court of Appeals

In this case, the trial court appeared to view the timeliness issue raised by Ms. Emory as a question of procedural due process and did not rule directly on whether the thirty-day statutory period is mandatory or directory. The Court of Appeals clarified that Ms. Emory's contention is not based on due process but is instead based on Tennessee Code Annotated section 49-5-512 (a)(2), which states that, once a tenured teacher sends the school board a demand for a hearing, "'[t]he director of schools shall, within five (5) days after receipt of the request, indicate the place of the hearing and set a convenient date, which date shall not be later than thirty (30) days following receipt of [the] notice demanding a hearing.'" *Emory*, 2015 WL 1934397, at *3, *6 (alterations in original) (emphasis removed) (quoting Tenn. Code Ann. § 49-5-512(a)(2)).

---

[9] Since the Board's hearing on the charges against Ms. Emory, section 49-5-512 of the Tenure Act has been amended multiple times. *See* Tenn. Code Ann. § 49-5-512 (2014).

The Court of Appeals considered at length whether the 30-day time period is directory rather than mandatory. Ultimately it concluded that, despite the use of the word "shall" in the statute, the timeliness provision for the school board hearing "is directory rather than mandatory."[10]  *See* Tenn. Code Ann. § 49-5-512(a)(2); *Emory*, 2015 WL 1934397, at *7.

In general, if statutory provisions are deemed mandatory, "they are not subject to satisfaction by substantial compliance. Substantial compliance is sufficient only when the statute's requirements are directory, not mandatory." *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 310 (Tenn. 2012). Nevertheless, despite holding that the Tenure Act's time provision is directory rather than mandatory, the Court of Appeals did not go on to address whether there was substantial compliance in this case. It pointed out that section 49-5-512(a)(2) contains no specific consequence for failure to hold the school board hearing within the thirty-day statutory period.[11]  *Emory*, 2015 WL 1934397 at *7. The appellate court declined Ms. Emory's invitation to hold that the Board's termination of

---

[10] In general, use of the word "shall" in a statute indicates that the statutory provision is mandatory, not discretionary. *See Home Builders Ass'n of Middle Tennessee v. Williamson Cnty.*, 304 S.W.3d 812, 819 (Tenn. 2010) (citing *Gray v. Cullom Mach., Tool & Die, Inc.*, 152 S.W.3d 439, 446 (Tenn. 2004); *Stubbs v. State*, 393 S.W.2d 150, 154 (Tenn. 1965); *Sanford Realty Co. v. City of Knoxville*, 110 S.W.2d 325, 327 (Tenn. 1937). "Notwithstanding this general rule, a statutory provision that pertains to the time for performing an act governed by the statute is usually construed to be directory only." *Home Builders Ass'n*, 304 S.W.3d at 819 (citations omitted); *see also Scheele v. Hartford Underwriters Ins. Co.*, 218 S.W.3d 636, 640 (Tenn. 2007) (quoting *Presley v. Bennett*, 860 S.W.2d 857, 860 (Tenn. 1993); *Trapp v. McCormick*, 130 S.W.2d 122, 125 (1939)) ("Statutory provisions relating to the mode or time of doing an act to which the statute applies are ordinarily held to be directory rather than mandatory."). As this Court explained in *Myers*, "To determine whether the use of the word 'shall' in a statute is mandatory or merely directory, we look to see 'whether the prescribed mode of action is of the essence of the thing to be accomplished.'" *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 309 (Tenn. 2012) (quoting 3 Norman J. Singer & J.D. Singer, *Sutherland Statutes and Statutory Construction* § 57:2 (7th ed. 2008)).

[11] The question of whether the statute specifies the consequence for noncompliance is a factor in determining whether a statutory provision is mandatory or directory. *See* 3 Norman J. Singer & J.D. Singer, *Sutherland Statutes and Statutory Construction* § 57:8 (7th ed. 2008) ("the lack of stated consequences for noncompliance leads to a directory construction"); *Marks v. New Orleans Police Dep't.*, 943 So. 2d 1028, 1035 (La. 2006) ("Generally, statutes using mandatory language prescribe the result to follow (a penalty) if the required action is not taken. If the terms of the statute are limited to what is required to be done, *i.e.*, procedural rules, then the statute is considered directory even though mandatory language is employed."). *Compare Myers*, 382 S.W.3d at 310-11 (noting that Tenn. Code Ann. §§ 29-26-121 and -122 both excuse noncompliance only if plaintiff can demonstrate "extraordinary cause," otherwise, "the complaint shall be dismissed."); *cf. Stevens v. Hickman Cmty. Health Care Serv., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013) (holding that "shall" is directory rather than mandatory and permitting substantial compliance, rather than strict compliance, where plaintiff's HIPAA authorization form did not meet criteria in Tenn. Code Ann. § 29-26-121(a)(2)(E)).

Ms. Emory was void, but it expressed concern that its holding "could render the provision meaningless." *Id.* Commenting that "some sanction . . . is necessary," the Court of Appeals held as follows:

> In our view, the only prejudice Ms. Emory suffered as a result of the delayed hearing is that she was suspended without pay following her demand for a hearing for a number of days that exceeded the statutory limit. Accordingly, the proper remedy is an award of back pay for the additional days that Ms. Emory was suspended without pay and without a hearing in violation of the Tenure Act. We reverse the judgment of the trial court and remand this matter to the trial court to determine the amount of back pay to which Ms. Emory is entitled for those days.

*Id.*

In this appeal, both parties argue that the relief awarded by the Court of Appeals has no basis in the Tenure Act. We agree. As noted by the intermediate appellate court, the time provision in section 49-5-512 (a)(2) carries no specific penalty for noncompliance. Courts are not at liberty to rewrite statutes. *See Myers*, 382 S.W.3d at 310 *(citing Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 803 (Tenn. 2000) ("[I]t is not our prerogative to rewrite the statutes."); *Carter v. Duhe*, 921 So. 2d 963, 970 (La. 2006) ("[I]t is not the function of the judicial branch . . . to legislate by inserting penalty provisions into statutes where the legislature has chosen not to do so."); s*ee also Marks v. New Orleans Police Dep't*, 943 So. 2d 1028, 1035-36 (La. 2006) ("Marks contends that the statutory provision provides the officer with . . . the right that the investigation be completed within sixty days. While this contention is correct, the statute does not establish a penalty for non-compliance and in the absence of prejudice, we cannot supply a penalty."). The remedy crafted by the Court of Appeals is not contained in the Tenure Act, and we are not at liberty to judicially modify the Act.

Accordingly, we reverse the Court of Appeals' award to Ms. Emory of "back pay for the additional days that Ms. Emory was suspended without pay and without a hearing in violation of the Tenure Act." *Emory*, 2015 WL 1934397, at *7.

### Timeliness of Hearing

On appeal, Ms. Emory takes the position that the Board's decision was arbitrary and capricious in that the Board failed to provide Ms. Emory with a hearing within the 30-day period required by Tennessee Code Annotated section 49-5-512(a)(2). Once the thirty-day period for Ms. Emory's Board hearing lapsed, she contends, the Board lost jurisdiction to terminate Ms. Emory's employment. At that point, Ms. Emory argues, in

order to terminate her employment, the Board was required to re-issue its notice of the charges and start the termination process over. She asks this Court to reverse the trial court, order reinstatement, and award Ms. Emory back pay dating back to the date of her suspension.

It is uncontroverted that, in her hearing before the Board, Ms. Emory raised no objection to the Board's failure to conduct the hearing within 30 days after it received notice of her demand for a hearing, as set forth in section 49-5-512(a)(2). Consequently, the Board had no opportunity to address the issue. As explained below, for this reason, we find that the timeliness issue is not properly before the Court.

We begin with the basic legal principle that, with few exceptions, litigants must raise their objections in the trial court or forego the opportunity to argue them on appeal. "It has long been the general rule that questions not raised in the trial court will not be entertained on appeal . . . ." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32-33 (Tenn. 2001) (quoting *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983); *see also In re Taylor B.W.*, 397 S.W.3d 105, 114 (Tenn. 2013) (citing *Lawrence*, 655 S.W.2d at 929; Tenn. R. App. P. 36(a)) ("It has long been the rule that this Court will not address questions not raised in the trial court."); *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991) ("issues not raised in the trial court cannot be raised for the first time on appeal"); *Rhea v. Marko Construction Co.*, 652 S.W.2d 332, 334 (Tenn. 1983); *East Sevier Cnty. Util. Dist. of Sevier Cnty. v. Wachovia Bank & Trust Co.*, 570 S.W.2d 850, 854 (Tenn. 1978); *City of Elizabethton v. Carter County*, 321 S.W.2d 822, 827 (Tenn. 1958).

The principle that a litigant must raise his objection at the first available opportunity applies no less where the tribunal of first instance is an administrative body. *See, e.g.*, *Welch v. Bd. of Prof'l Responsibility. for the Sup. Ct. of Tenn.*, 193 S.W.3d 457, 464 (Tenn. 2006) (stating that the general principle is that "failure to make a timely, specific objection" in the trial court prevents a litigant from raising challenge on appeal "applies equally to proceedings before the hearing committee as it does to proceedings in a trial court"). In the case of *In re Billing & Collection Tariffs of S. Cent. Bell*, 779 S.W.2d 375, 380 (Tenn. Ct. App. 1989), the Court of Appeals explained:

> In the context of civil litigation, our courts have long recognized that it is incumbent upon a litigant to call to the trial court's attention those errors he believes have adversely affected his case. Thus, we have consistently held that even in cases where error might exist, a litigant will not be permitted to raise questions and issues on appeal that have not first been presented to the trial court. The trial court must be given the opportunity to correct errors in

the conduct of a trial such as the erroneous admission of evidence before a litigant will be able to seek reversal on appeal.

> These principles have equal validity in administrative proceedings. No matter how informal the proceeding, a person appearing before an administrative tribunal must make timely objections to procedural errors and must raise in a timely manner the issues and questions he deems material before he will be permitted to raise them in a petition for review. To require otherwise would undercut the effectiveness of administrative proceedings and would cause serious waste of effort by the parties and the administrative tribunal itself.

*Id*. at 380 (citations omitted).

This rule applies with particular force with respect to alleged procedural deficiencies in the underlying administrative proceedings. In *McClellan v. Board of Regents of State University*, the Court held: "One appearing before an administrative tribunal must make timely objections to procedural errors and must raise the errors at the administrative level in order to preserve them for consideration in a petition for judicial review." 921 S.W.2d 684, 690 (Tenn. 1996) (citation omitted); *see also City of Brentwood v. Metro. Bd. of Zoning Appeals,* 149 S.W.3d 49, 55 (Tenn. Ct. App. 2004) ("Parties to administrative proceedings must raise all objections to procedural errors during the hearing in order to preserve these questions for later appellate review.").

In *McClellan*, the plaintiff was charged with various violations of the policies of the Tennessee State Board of Regents. *McClellan*, 921 S.W.2d at 686. Pursuant to Tennessee's Uniform Administrative Procedures Act (UAPA), he received an administrative hearing on the charges. *Id.* The administrative proceedings resulted in an adverse decision, and the plaintiff sought judicial review. *Id.* at 687. In the judicial proceedings, the plaintiff raised for the first time several alleged procedural irregularities, including an argument that the composition of the hearing panel was contrary to the UAPA. *Id.* The lower courts affirmed the administrative decision, and the plaintiff was granted permission to appeal to this Court. *Id.* at 687-88.

On appeal, the *McClellan* Court declined to grant relief to the plaintiff, in part because he had raised no objection to the hearing procedures either before or during the administrative hearing. *Id.* at 690. The Court drew the analogy to a litigant's failure to raise an issue in the trial court:

> Judicial review of an agency decision is confined to the administrative record, except in limited circumstances. It follows that it is no less

incumbent for a party to an administrative proceeding to raise issues of procedural irregularity than it is for a party in a judicial proceeding. The administrative tribunal, like the trial court, must be given the opportunity to correct procedural errors. Allowing parties to acquiesce in the procedures, but to challenge those same procedures on appeal is inefficient and unreasonable. Had Dr. McClellan complained of the procedure initially, or even in his Petition for Appeal of the Initial Order, the procedures could have been clarified or even modified. He did not raise the issue until long after it could have been explored and, if necessary, rectified. He cannot be heard to complain at this late date.

*Id*. at 690 (citation and footnote omitted).

The Court applied the same principle in a case in which a non-tenured school employee failed to raise alleged procedural deficiencies in the administrative hearing on charges against him; the administrative proceedings resulted in the employee's dismissal. *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 221, 237 (Tenn. 2010). In the ensuing judicial review of the administrative decision, the employee contested his dismissal on the basis of a variety of alleged procedural irregularities. *Id.* at 226. The Court observed that, prior to filing his complaint in the circuit court, the plaintiff "made no objection to the procedures Defendants utilized in conjunction with dismissing him." *Id*. at 237. The *Bailey* Court cited several Tennessee cases holding that parties must object to procedural deficiencies at the administrative level in order to preserve them for judicial review. *Id.* (citing *McClellan*, 921 S.W.2d at 690; *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 455 (Tenn.1995) ("Full consideration of constitutional procedural issues by the agency will assure that the responsible agency has a full opportunity to reach a considered decision on a complete record after a fair proceeding."); *City of Brentwood*, 149 S.W.3d at 55 (citing *McClellan*, 921 S.W.2d at 690) ("Parties to administrative proceedings must raise all objections to procedural errors during the hearing in order to preserve these questions for later appellate review.").[12]

---

[12]Other states likewise require litigants to raise objections first at the administrative level, particularly where the administrative hearing is similar to a trial. *See*, *e.g.*, *Tr. for Alaska v. State Dep't of Natural Re.*, 865 P.2d 745, 748 (Alaska 1993) (recognizing that a party must raise an issue during the administrative proceedings to preserve the issue for appeal); *Dragan v. Conn. Med. Examining Bd.*, 613 A.2d 739, 747 (holding that plaintiff waived his right to cross-examine a witness when plaintiff failed to timely assert the right during the administrative proceeding and failed to seek appropriate relief from the board); *Texaco-Cities Serv. Pipeline Co. v. McGaw*, 695 N.E.2d 481, 489 (Ill. 1998) (holding that the reviewing court will generally not consider for the first time issues or defenses, including constitutional challenges, that plaintiff failed to raise before the administrative agency); *Bd. of Registration in Med. v. Fiorica*, 488 A.2d 1371, 1374-75 (Me. 1985) (holding that doctor waived any defense or objection to the board's alleged failure to comply with the administrative procedures by failing to raise such defense or objection in his pleadings or before the administrative court). Waiver has been applied in other

The Court in *Bailey* noted that the plaintiff employee "could have raised the issue of the timeliness of the Full Hearing either before it was conducted or during it." *Id.* Doing so, the Court observed, would have given the administrative authorities the opportunity to correct the procedural deficiencies. *Id.* at 237-38. The Court commented that the plaintiff employee had "offered no reason for his failure to raise" the procedural issues at the administrative level. *Id.* at 237-38. Finding waiver based on the employee's "silence, acquiescence, and active participation in the administrative procedures provided," the Court declined to rule in favor of the employee based on the alleged irregularities in the administrative procedures provided. *Id.* at 237-38.

In this case, in oral argument, the Court asked counsel for Ms. Emory whether she had waived the timeliness issue by not raising it at the school board level. Counsel for Ms. Emory pointed out that, although there was much discussion in the lower courts about the fact that Ms. Emory did not raise her timeliness objection in the Board hearing, the Board has not asserted waiver *per se;* for this reason, Ms. Emory argued that the Court should not now consider whether Ms. Emory had waived her objection.

"Rules 13(b) and 36(a) of the Tennessee Rules of Appellate Procedure, considered together, give appellate courts considerable discretion to consider issues that have not been properly presented in order to achieve fairness and justice." *In re Kaliyah S.*, 455 S.W.3d 533, 540 (Tenn. 2015) (citing *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000)).[13] ""Taken together, these rules permit appellate

---

jurisdictions to tenured teachers. *See, e.g., Alexander v. Sch. Dist. No. 17 of Thurston Cnty.*, 248 N.W.2d 335, 338 (Neb. 1976) (addressing tenured teachers' objection to lack of public notice of termination hearing, the Court stated, "Any person who has notice of a meeting and attends the meeting should be required to object specifically to the lack of public notice at the meeting, or be held to have waived his right to object on that ground at a later date.").

[13]Rule 13(b) of the Tennessee Rules of Appellate Procedure provides:

Consideration of Issues Not Presented for Review. Review generally will extend only to those issues presented for review. The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review, and may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process.
Rule 36(b) of the Tennessee Rules of Appellate Procedure provides:

(b) Effect of Error. A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process. When necessary to do substantial justice, an appellate

courts to grant complete relief to the parties as long as they have been given fair notice and an opportunity to be heard on the dispositive issues.'" *Id.* (quoting *Heatherly*, 43 S.W.3d at 916). In this case, to achieve fairness and justice, we exercise our discretion to address whether Ms. Emory's failure to raise the timeliness issue in the proceedings before the Board precludes her from raising it on judicial review of the Board's decision.

As discussed above, section 49-5-512 provides for tenured teachers faced with dismissal to receive a comprehensive hearing before the school board. The statute contains detailed provisions; subsection (a) of section 49-5-512 alone contains nine subparts that set forth a plethora of requirements. These requirements range from imperatives, such as the right to counsel, to lesser matters, such as payment for mileage for witnesses.[14]

---

court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal.

[14] The requirements for the hearing detailed in subsection (a) of section 49-5-512 (2006) are:

(a) A teacher, having received notice of charges pursuant to § 49-5-511, may, within thirty (30) days after receipt of notice, demand a hearing before the board, as follows:

(1) The teacher shall give written notice to the director of schools of the teacher's request for a hearing;

(2) The director of schools shall, within five (5) days after receipt of request, indicate the place of such hearing and set a convenient date, which date shall not be later than thirty (30) days following receipt of notice demanding a hearing;

(3) The teacher may appear at the hearing and plead the teacher's cause in person or by counsel;

(4) The teacher may present witnesses, and shall have full opportunity to present the teacher's contentions and to support them with evidence and argument. The teacher shall be allowed a full, complete, and impartial hearing before the board, including the right to have evidence deemed relevant by the teacher included in the record of the hearing, even if objected to by the person conducting the hearing;

(5) The chair of the board conducting the hearing is hereby empowered to issue subpoenas for witnesses to compel their attendance at hearings authorized under this section. All parties to the proceeding shall have the right to have subpoenas issued by the chair of the board to compel the attendance of all witnesses deemed by such parties to be necessary, for a full and complete hearing. All witnesses shall be entitled to the witness fees and mileage provided by law for legal witnesses, which fees and mileage shall be

We consider Ms. Emory's hearing before the Board in this case. *Thompson*, 395 S.W.3d at 623. The hearing took place over three separate days and was well-nigh a trial. Both parties were represented by counsel, could subpoena witnesses, gave opening and closing statements, and exchanged witness lists. The Board followed the Rules of Evidence,[15] put witnesses under oath, invoked "the Rule" to bar witnesses from being present except when testifying, allowed both parties to conduct direct examination, cross-examination, redirect and re-cross, and then allowed Board members to ask their own questions of each witness. *See generally* Tenn. Code Ann. § 49-5-512(a). Over the three days of proceedings, the Board put on testimony from five witnesses, Ms. Emory put on testimony from four witnesses and testified on her own behalf, and twenty-five exhibits were placed into evidence. The testimony and exhibits covered a ten-year span during which Ms. Emory had taught at several different schools.

As we have observed, during the lengthy Board hearing, nary a word about the considerable delay in scheduling the hearing was uttered by either Ms. Emory or her counsel. Despite the fact that Ms. Emory was represented by counsel during the period preceding the Board hearing, nothing in the record suggests that she objected to the delayed hearing date in advance of the hearing. Like the teacher in *Bailey*, Ms. Emory could have raised the issue of the timeliness of the Board hearing "either before it was conducted or during it." *Bailey*, 303 S.W.3d at 237. Also as in *Bailey*, Ms. Emory "has offered no reason" for failing to do so. *Id.* at 238.

---

paid as a part of the costs of such proceeding. The costs of such proceeding shall be paid by the losing party;

(6) The chair of the board shall administer oaths to witnesses, who shall testify under oath;

(7) A record of the hearing, either by transcript, recording, or as is otherwise agreed by the parties, shall be prepared, if the action of the board is appealed, and all actions of the board shall be reduced to writing and included in the record, together with all evidence otherwise submitted;

(8) On request of either party to the trial, witnesses may be barred from the hearing except as they are called to testify. The hearing may be private at the request of the teacher or in the discretion of the board; and

(9) The board shall within ten (10) days decide what disposition to make of the case and shall immediately thereafter give the teacher written notice of its findings and decision.

Tenn. Code Ann. § 49-5-512 (a)(1)-(9) (2006).

[15] The Board allowed some hearsay evidence.

Despite Ms. Emory's failure to even mention the delay during the Board hearing, in the ensuing judicial review of the Board's decision, she made the Board's failure to hold the hearing within 30 days the centerpiece of her argument. In response to Ms. Emory's argument, counsel for the Board repeatedly told the chancery court that the delay in the hearing date was consensual, the product of attempts to accommodate the busy schedules of the attorneys and the citizen school board members, and also to allow adequate time to prepare for the hearing. Counsel for Ms. Emory claimed that he did not know the reason for the delay.[16]

There are no documents in the record showing actual consent for the substantial delay in scheduling the hearing.[17] However, the record indicates that Ms. Emory changed attorneys several months after the Board received her demand for a hearing; the correspondence between the Memphis City School System and Ms. Emory's counsel, who had been supplied to Ms. Emory by the Tennessee Education Association, contains no reference to the ongoing delay. These circumstances, considered along with the substantial nature of the hearing and Ms. Emory's failure to even *refer* in the hearing to the delay in scheduling, much less object to it, suggest at least acquiescence by Ms. Emory in the failure to hold the hearing during the statutory period.

From our review of the record, Ms. Emory received a full and fair hearing. She was given ample opportunity to put on proof, present testimony from witnesses on her behalf, testify on her own behalf, cross-examine the Board's witnesses, answer questions from Board members, and argue her view of the significant events that were the basis for the charges. On appeal, though Ms. Emory's counsel indicates that he would have pursued a different strategy had he been representing her at the time, he does not question the fairness of the Board's hearing.

Ms. Emory argues that she was prejudiced by the delay in scheduling the hearing. Ms. Emory's affidavit, supplied to the chancery court, states that she was without income and health insurance after her discharge, and that she suffered stress from the uncertainty during the pendency of the proceedings. Respectfully, this does not amount to prejudice from the delay in scheduling the hearing. The trial court found that "[t]he facts presented and the outcome of [Ms. Emory's] tenure hearing would not have been different if the

---

[16] Ms. Emory's counsel for the chancery court proceedings and for this appeal did not represent her before the Board.

[17] The fact that there are no documents or testimony in the record of the Board hearing showing the reason for the delay arises, of course, from the fact that Ms. Emory made no objection in the Board proceedings to the delay in holding her hearing.

hearing had been held earlier." This finding is fully supported in the record. Ms. Emory has not pointed to any way in which her ability to respond to the charges against her was adversely impacted by the delay. *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 35-36 (1952) (surmising that "[t]he apparent reason for complacency" by the appellant, in failing to object to a procedural error during the underlying administrative proceedings, "was that [the appellant] was not actually prejudiced by" the procedural error). To the contrary, considering Ms. Emory's change in attorneys during the pendency of the hearing, the need for her new attorney to prepare for the hearing, and the very substantial nature of the proceedings, it could be argued that holding the hearing beyond the thirty-day period may have actually enhanced Ms. Emory's ability to meet the charges against her. *See Potts v. Gibson*, 469 S.W.2d 130, 133-34 (Tenn. 1971) ("Except in the clearest case of a material disregard by the Board of the procedural requirements of the statute or a showing of prejudice, where a trial de novo has been had in which the teacher appeared and fully participated[,] the appellate court should not interfere with the action of the Board on procedural grounds.").

We are struck as well by what Ms. Emory acknowledges would likely occur if we were to grant the relief she seeks. Ms. Emory concedes that, if this Court were to reverse the termination of her employment, the Board could immediately re-issue its notice of the charges against her—the same charges that were the subject of the September 20, 2005 letter to Ms. Emory—and start the termination process over. Indeed, the Board would have little choice but to do so, since the prior Board hearing clearly established that Ms. Emory should not be placed back in the classroom teaching children. Ms. Emory nevertheless seeks reinstatement, at least until the charges are re-issued, and an award of back pay dating back to the date of Ms. Emory's suspension.

Under these circumstances, we would achieve little more than irony by voiding Ms. Emory's dismissal and remanding this case for the Board to start the termination process anew, over ten years after her employment was terminated and twenty years after the events underlying the termination, solely to vindicate a delay in the hearing that Ms. Emory did not believe warranted *even a mention* in the Board proceedings. *See L. A. Tucker Truck Lines, Inc.*, 344 U.S. at 35-36 ("The issue is clearly an afterthought, brought forward at the last possible moment to undo the administrative proceedings without consideration of the merits and can prevail only from technical compulsion irrespective of considerations of practical justice.").

Had Ms. Emory objected during the Board proceedings to the delay in holding the hearing, the Board could have voided the charges at that time, re-issued them, and promptly scheduled a new hearing, the same relief Ms. Emory seeks today. *See Bailey*, 303 S.W.3d at 237 (quoting *McClellan*, 921 S.W.2d at 690) ("The administrative tribunal, like the trial court, must be given the opportunity to correct procedural errors.");

*Unemployment Comp. Comm'n v. Aragon*, 329 U.S. 143, 155 (1946) ("A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action.").

The efficient and fair administration of justice demands that a litigant not be permitted to withhold her objections, await the outcome, and then complain that she was denied her rights if she does not approve of the resulting decision. *See Bailey*, 303 S.W.3d at 237 (quoting *McClellan*, 921 S.W.2d at 690) ("'Allowing parties to acquiesce in the procedures, but to challenge those same procedures on appeal is inefficient and unreasonable.'"); *Dragan v. Connecticut Med. Examining Bd.*, 613 A.2d 739, 747 (1992) (citations and internal quotation marks omitted) ("A party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that were not asserted before the board. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial."). Allowing a party to hide an ace up her sleeve for appeal would undermine fair play and finality of judgment. In contrast, our reaffirmed insistence upon contemporaneous objections to agency errors should provide incentive for litigants to see that all procedural deficiencies are addressed before the administrative body completes its consideration of a dispute. *See City of Brentwood*, 149 S.W.3d at 55 (citing *McClellan*, 921 S.W.2d at 690) ("Parties to administrative proceedings must raise all objections to procedural errors during the hearing in order to preserve these questions for later appellate review.").

For these reasons, we hold that the timeliness issue raised by Ms. Emory in the judicial review of the Board's decision is not properly before this Court, and we decline to overturn the Board's decision to terminate Ms. Emory's employment because of the delay in holding the school board hearing.[18] Therefore, we affirm the trial court's decision to uphold the Board's termination of Ms. Emory's employment.

## CONCLUSION

In sum, we reverse the Court of Appeals' award of partial back pay to Ms. Emory because the relief ordered by the Court of Appeals is without basis in the Tenure Act. As to Ms. Emory's argument that the termination of her employment must be set aside because the Board failed to hold her hearing within thirty days after it received her notice

---

[18] This holding pretermits the issue of whether the thirty-day period for the school board hearing set forth in Tennessee Code Annotated section 49-5-512(a)(2) is mandatory or directory.

of a demand for a hearing, as set forth in Tennessee Code Annotated section 49-5-512(a)(2), we hold that the issue is not properly before this Court because Ms. Emory failed to raise her timeliness objection either before or during the Board hearing. Accordingly, we affirm the trial court's decision to uphold the termination of Ms. Emory's employment. Costs on appeal are to be taxed to Plaintiff/Appellee, Rogelynn Emory.


_____
HOLLY KIRBY, JUSTICE