# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 4, 2025 Session

## RADONDA VAUGHT v. TENNESSEE BOARD OF NURSING

**Appeal from the Chancery Court for Davidson County**
**No. 21-0948-I      Patricia Head Moskal, Chancellor**

_____

### No. M2023-01816-COA-R3-CV
_____

This is an appeal arising from a decision by the Tennessee Board of Nursing ("the Board") to revoke a registered nurse's license after she retrieved the wrong medication from an automatic dispenser and administered it to a hospital patient, resulting in the patient's death.  The Tennessee Department of Health ("the Department") brought an initial complaint against the nurse concerning the incident, which it first determined did not merit further action but then later re-opened.  Simultaneously, the nurse faced criminal prosecution and was ultimately convicted of two criminal charges related to the incident. Following a contested hearing in the administrative proceedings, the Board revoked the nurse's license.  The nurse sought judicial review of this decision pursuant to Tennessee's Uniform Administrative Procedure Act.  During the judicial review proceeding, the nurse raised, for the first time, the doctrines of *res judicata* and collateral estoppel as affirmative defenses to the Department's complaint.  In response, the Board argued that the nurse had waived these affirmative defenses because she had failed to raise them during the administrative proceedings.  While the petition for judicial review remained pending, the criminal case moved to the sentencing phase.  A doctor, who had testified as an expert witness in both the contested administrative proceeding and the criminal case, wrote a letter of support for the nurse to the criminal court judge in preparation for her sentencing.  When the nurse learned of the doctor's supportive letter, she moved the trial court to remand the instant case to the Board so that the Board could consider the contents of the letter in its decision.  The trial court declined to remand the matter to the Board or to allow the nurse to present the letter to the Board as additional evidence.  The trial court subsequently entered a final order, determining that the nurse had not waived the affirmative defenses of *res judicata* or judicial estoppel but declining to reverse the Board's decision on those grounds.  The trial court then affirmed the Board's decision to revoke the nurse's license. The nurse has appealed.  Upon review, we determine that the nurse waived the affirmative defenses of *res judicata* and collateral estoppel because she failed to present those doctrines during the administrative proceedings   Accordingly, we reverse the trial court's determination concerning waiver of those defenses.  In all other respects, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Peter J. Strianse, Nashville, Tennessee, for the appellant, Radonda Vaught.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; and Ryan Gallagher and T. Eric Winters, Assistant Attorneys General, for the appellee, Tennessee Board of Nursing.

**OPINION**

1. Factual and Procedural Background

This appeal involves a petition for judicial review of a Board decision, which was filed pursuant to the Uniform Administrative Procedure Act, codified at Tennessee Code Annotated §§ 4-5-101, *et seq.* ("UAPA"). The underlying facts are largely undisputed.

The petitioner, Radonda Vaught, worked as a registered nurse in the neurosurgical intensive care unit ("neuro-ICU") at Vanderbilt University Medical Center ("VUMC") from 2015 to 2018. On December 26, 2017, Ms. Vaught was called upon to administer a physician-prescribed, intravenous ("IV"), anti-anxiety sedative known as "Versed" to a patient at VUMC in preparation for the patient to undergo a positron emission tomography ("PET") scan. Ms. Vaught was not the patient's primary nurse but was serving as the "Help-All" nurse in the hospital's neuro-ICU at the time.

When Ms. Vaught attempted to retrieve the Versed medication through an "automated dispensing cabinet" located in the neuro-ICU, she was unable to find the drug in the patient's profile. Ms. Vaught overrode the patient's profile to search for Versed in the dispensing cabinet, a procedure that Ms. Vaught describes as "common" practice for registered nurses. As the Board ultimately determined in its final order, Ms. Vaught "typed in at least the letters 'VE' in the override function of the automatic dispensing cabinet [after which a] medication with the letters 'VE' popped up and [Ms. Vaught] removed the medication out of the cabinet."[1] However, the drug that appeared in the search was not Versed but was instead a "paralytic drug" known as "Vecuronium." Ms. Vaught pulled the Vecuronium from the dispenser and, believing it to be Versed, administered it to the patient without first looking at the medication to verify that it was, indeed, Versed.

---

[1] Ms. Vaught testified at the Board hearing that she "would have typed in the entire name of the drug" that she was looking to override and therefore "would have typed in Versed." However, at the conclusion of the hearing, Ms. Vaught agreed, without objection, to the wording of the Board's final order.

According to Ms. Vaught, she did not stay to monitor the patient after administering the IV because she was told by another nurse that monitoring was not necessary. The patient subsequently died due to complications related to the administration of Vecuronium through the IV.

As a result of this incident, a complaint was filed against Ms. Vaught in 2018, but after an internal investigation, which involved a review by the Board's consultant and a staff attorney, the Department determined that the matter did not merit further action. The Department communicated this decision to Ms. Vaught by letter dated October 23, 2018, which indicated, *inter alia*, that the decision was "not a disciplinary action." However, in December 2018, the Department reopened its investigation upon a new complaint based upon the same underlying facts. The Tennessee Bureau of Investigation ("TBI") concomitantly initiated a criminal investigation of Ms. Vaught's actions in administering Vecuronium to the patient. On September 27, 2019, the Department filed a notice of charges against Ms. Vaught, alleging that she had engaged in unprofessional conduct, failed to maintain accurate records for each patient, and abandoned or neglected a patient requiring nursing care.

In July 2021, the Board conducted a two-day hearing on the charges brought by the Department against Ms. Vaught. During the hearing, Dr. Terry Bosen, a pharmacist and program director of the Medication Safety Program at VUMC, testified that nurses like Ms. Vaught had the ability to override the automatic medication dispenser to access medications but stated that this ability came with an "expectation in an override situation that the nurse or clinician is verifying against the order" for whether the correct medication has been dispensed by the machine. Ms. Vaught testified before the Board and admitted that she "did not look at the vial to read what it was" before dispensing Vecuronium to the patient. Following the hearing, the Board revoked Ms. Vaught's license to practice as a registered nurse and found her guilty of unprofessional conduct, failure to maintain a record, and abandonment or neglect of a patient requiring nursing care. The Board also assessed a fine of $3,000.00 against Ms. Vaught. The Board memorialized this decision in a final order entered on July 23, 2021.

In September 2021, Ms. Vaught sought judicial review of the Board's decision in the Davidson County Chancery Court ("trial court") pursuant to Tennessee Code Annotated § 4-5-322, which is the UAPA section that governs judicial review of agency decisions. Ms. Vaught claimed that (1) the Department's decision to close the first complaint against her in 2018 barred the subsequent charges under the principles of *res judicata* or collateral estoppel and (2) the Board's decision to revoke her license was "unlawful and flawed" because it was made on an incomplete record.

During the pendency of the judicial review before the trial court, a jury convicted Ms. Vaught of two criminal offenses related to the same underlying facts, including one charge of negligent homicide. Following that conviction, the criminal case moved to the

sentencing phase. While Ms. Vaught awaited her sentencing hearing, numerous individuals from the medical profession wrote letters of support for Ms. Vaught to the criminal court judge. One such letter was written by Dr. Bosen, the doctor who had testified as an expert witness before the Board. When Ms. Vaught learned of Dr. Bosen's letter, dated May 6, 2022, she moved to remand the judicial review proceedings in this case from the trial court back to the Board, pursuant to § 4-5-322(h) of the UAPA. In the motion for remand, Ms. Vaught argued that Dr. Bosen's May 6, 2022 letter amounted to "newly discovered evidence" that the Board should consider. In the letter, Dr. Bosen had written that Ms. Vaught had not acted with "intentional neglect" when she administered Vecuronium to the patient. According to Dr. Bosen, certain override limitations programmed into the automatic medicine dispenser could have caused a "nurse or clinician to select the wrong medication by confirmation bias expecting to see something that isn't there."

On September 13, 2022, the trial court denied Ms. Vaught's motion to remand, which the court treated as a motion for leave to present additional evidence to the Board. The trial court concluded that Dr. Bosen's letter did not constitute material evidence and that even if it did, Ms. Vaught had not presented good reasons for failing to present the additional evidence during the administrative hearing, as required by § 4-5-322(e) of the UAPA. The judicial review proceeded to a hearing before the trial court.

In an order entered on November 27, 2023, the trial court affirmed the Board's decision to revoke Ms. Vaught's nursing license. In so ordering, the trial court first determined that Ms. Vaught had not waived her contentions of *res judicata* and collateral estoppel by failing to raise them as affirmative defenses in her responsive pleadings before the Board. This decision notwithstanding, the court rejected Ms. Vaught's substantive arguments relative to those doctrines. The court reasoned that the Department's initial decision "not to pursue charges against Ms. Vaught was not an adjudication in an adversary proceeding and not a final judgment on the merits." The court further determined that Ms. Vaught and the Department did not "litigate" any issues concerning the first complaint and that "only the Board of Nursing, not the Department, acts in a quasi-judicial capacity[.]" Hence, the trial court determined that neither *res judicata* nor collateral estoppel applied to bar the Board's revocation of Ms. Vaught's license.

Concerning Ms. Vaught's postulate that her rights had been unfairly prejudiced by the Board's inability to consider Dr. Bosen's letter, the trial court reiterated its findings from the hearing on the motion to remand, set forth above. The court further determined that the Board's "failure to consider a letter that had not yet been written" did not constitute "unlawful procedure" and that Ms. Vaught could have "elicited Dr. Bosen's testimony in the administrative proceedings, but did not do so[.]" Ms. Vaught timely appealed.

## II. Issues Presented

Ms. Vaught presents the following issues on appeal, which we have restated slightly:

1.  Whether the trial court erred by declining to find that the October 23, 2018 letter from the Department—which concluded that the complaint against Ms. Vaught "did not merit further action"—cconstituted a final, quasi-judicial agency determination warranting application of the doctrines of *res judicata* and collateral estoppel.

2.  Whether the trial court erred by declining to reverse the Board's revocation of Ms. Vaught's nursing license when that decision was purportedly based upon unlawful procedure and incomplete findings from an incomplete record.

The Board has presented the following additional issue:

3.  Whether the trial court erred by declining to find that Ms. Vaught had waived the issues of *res judicata* and collateral estoppel when she failed to raise them before the Board during the administrative proceedings.

## III. Standard of Review

The standard of review in an appeal of a contested case before the Board is the same for the trial court and this Court. *See Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 264 (Tenn. 2009) (citing *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999)). "Judicial review of administrative agencies following contested case hearings is governed by the [UAPA]." *Miller v. Tenn. Bd. of Nursing*, 256 S.W.3d 225, 229 (Tenn. Ct. App. 2007). Concerning judicial review, Tennessee Code Annotated § 4-5-322(h) (West May 18, 2021, to current) of the UAPA provides in pertinent part:

(h)     The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1)     In violation of constitutional or statutory provisions;

(2)     In excess of the statutory authority of the agency;

(3)     Made upon unlawful procedure;

- 5 -

(4)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

* * *

(5)(B)(i)     Unsupported by a preponderance of the evidence in light of the entire record, if the administrative findings, inferences, conclusions, or decisions were made by a board, council, committee, agency, or regulatory program created pursuant to chapters 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 of title 63;[2]

(ii)     In determining whether the administrative findings, inferences, conclusions, or decisions are supported by a preponderance of the evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Concerning our review of the trial court's findings generally, we review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *See Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

## IV.  Waiver

Before the trial court and on appeal, the Board has posited that Ms. Vaught waived the affirmative defenses of *res judicata* and collateral estoppel because she did not present them as affirmative defenses during the administrative proceedings. Before the trial court, the Board relied on Tennessee Rule of Civil Procedure 12.08, which provides, in pertinent

---

[2] The Department brought the charges against Ms. Vaught pursuant to Tennessee Code Annotated § 63-7-115 and her nursing license was revoked by the Board on July 23, 2021.

part, that a party waives "all defenses and objections" when that party does not present such defenses either by motion or in the party's answer or reply to a complaint, and upon the Tennessee Supreme Court's decision in *Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 735 (Tenn. 2013) ("As a general rule, a party waives an affirmative defense if it does not include the defense in an answer or responsive pleading.") (citing Tenn. R. Civ. P. 12.08).

Concerning the Board's waiver argument, the trial court determined,

> *Waiver*. The Board relies on Tennessee Rule of Civil Procedure 12.08 to argue that Ms. Vaught waived the affirmative defenses of res judicata and collateral estoppel by failing to raise them through a written response to the Notice of Charges before the Board. The only case cited by the Board in support of this argument is a state trial court healthcare liability action, which did not involve a prior administrative proceeding. *See Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 735 (Tenn. 2013). The Board acknowledges that Ms. Vaught requested a proposed special jury instruction based on "judicial estoppel" on the eve of the administrative hearing. And, while the Administrative Judge disallowed the instruction, Ms. Vaught's counsel was permitted to raise that defense during closing argument but did not do so. Judicial estoppel, however, is a different theory than the doctrines of res judicata or collateral estoppel, and Ms. Vaught did not argue to the Board and does not argue on judicial review that "judicial estoppel" bars the Board's revocation decision.

> The Board conducts license revocation proceedings as contested cases under the Uniform Rules of Procedure for Hearing Contested Cases Before State Administrative Agencies, Tenn. Comp. R. & Regs. 1360-01-01, *et seq.* *See also* Tenn. Comp. R. & Regs. 1000-03, Rules of Tennessee Board of Nursing (contested cases governed under Tenn. Comp. R. & Regs. 1360-04-01). Under those administrative rules, it is only where they do not address a specific issue that "reference may be made to the Tennessee Rules of Civil Procedure for guidance as to the proper procedure to follow . . . ." Tenn. Comp. R. & Regs. 1360-04-01-.01(3). In contested cases before the Board of Nursing, the rules allow—but do not require—a party to file a written answer to charges filed against her to assert any available defense:

> > The party *may* respond to the charges set out in the notice or other original pleading by filing a written answer with the Agency in which the party *may*:

> > * * *

- 7 -

(i) Assert any available defense.

Tenn. Comp. R. & Regs. 1360-04-01-.05(5)(i) (emphasis added). Thus, the filing of a written answer and assertion of any defense is optional, but not required. Consequently, the rules do not preclude a party from raising affirmative defenses at a contested case hearing based on any failure to do so in a written answer. Further, because the administrative rules specifically address the procedure for raising available defenses, the Tennessee Rules of Civil Procedure do not apply. Thus, the Court concludes that Ms. Vaught did not waive her claim or issue preclusion arguments for failing to raise them as affirmative defenses in a responsive pleading before the Board.

(Footnote omitted.) Upon review, we agree with the trial court that based upon the permissive language of the administrative code, the requirement for raising a defense by filing a <u>written</u> response to a complaint brought before an administrative body such as the Board is optional. *See* Tenn. Comp. R. & Regs. 1360-04-01-.05(5)(i). We also agree that Ms. Vaught's failure to raise collateral estoppel and *res judicata* as affirmative defenses in a <u>written</u> responsive pleading during the administrative proceedings did not, without more, constitute waiver of those defenses. Notwithstanding, we note that the analysis does not conclude there.

We do not interpret the use of the word, "may," in the administrative code to signify that a defendant in an administrative proceeding can avoid waiver in every instance. Significantly, the trial court did not address the fact that Ms. Vaught not only failed to raise *res judicata* or collateral estoppel in a written responsive pleading before the Board, but she also failed to present those defenses at any time during the administrative proceedings.

We further disagree with the trial court's determination that the Tennessee Rules of Civil Procedure do not apply to the instant case. The administrative code expressly states:

In any situation that arises that is not specifically addressed by these rules, reference may be made to the Tennessee Rules of Civil Procedure for guidance as to the proper procedure to follow when appropriate and to whatever extent will best serve the interests of justice and the speedy and inexpensive determination of the matter at hand.

Tenn. Comp. R. & Regs. 1360-04-01-.01(3). The administrative code does not specifically address the issue of waiver of an affirmative defense in a contested case before an administrative judge; therefore, we turn to the Tennessee Rules of Civil Procedure for "guidance as to the proper procedure to follow" as the administrative code instructs. *See id.*

Tennessee Rule of Civil Procedure 12.02 provides, *inter alia*, that when, as in the instant case, the "pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to the claim for relief." Thus, pursuant to Rule 12.02, Ms. Vaught was entitled to raise the affirmative defenses of *res judicata* and collateral estoppel at any time during the administrative proceedings, including during the hearing. However, she failed to do so.

On appeal, the Board relies on the Tennessee Supreme Court's decision in *Emory v. Memphis City Sch. Bd. of Educ.*, 514 S.W.3d 129, 146 (Tenn. 2017), to argue that even when "the tribunal of first instance is an administrative body," a party must raise an issue before that tribunal to preserve that issue for judicial review. In *Emory*, a tenured teacher had been terminated following a contested administrative hearing before a school board. *Id.* at 131. The school board had failed to conduct the hearing within the thirty days required by statute. *Id.* at 134. The teacher did not raise an objection to the untimeliness of the hearing during the administrative proceedings but instead raised the objection for the first time in her petition for judicial review before the trial court. *Id.* at 146. The trial court determined that the teacher had waived her timeliness argument because she had failed to present it during the administrative proceedings. *Id.* at 137.

The Tennessee Supreme Court upheld the trial court's determination that the teacher had waived her timeliness argument by failing to raise it before the school board. *Id.* at 152. In so determining, the *Emory* Court elucidated:

> As we have observed, during the lengthy Board hearing, nary a word about the considerable delay in scheduling the hearing was uttered by either Ms. Emory or her counsel. Despite the fact that Ms. Emory was represented by counsel during the period preceding the Board hearing, nothing in the record suggests that she objected to the delayed hearing date in advance of the hearing. Like the teacher in *Bailey*, Ms. Emory could have raised the issue of the timeliness of the Board hearing "either before it was conducted or during it." *Bailey*[ *v. Blount Cnty. Bd. of Educ.*], 303 S.W.3d [216,] 237 [(Tenn. 2010)]. Also as in *Bailey*, Ms. Emory "has offered no reason" for failing to do so. *Id.* at 238.

> Despite Ms. Emory's failure to even mention the delay during the Board hearing, in the ensuing judicial review of the Board's decision, she made the Board's failure to hold the hearing within 30 days the centerpiece of her argument.

> * * *

From our review of the record, Ms. Emory received a full and fair hearing. She was given ample opportunity to put on proof, present testimony from witnesses on her behalf, testify on her own behalf, cross-examine the Board's witnesses, answer questions from Board members, and argue her view of the significant events that were the basis for the charges. On appeal, though Ms. Emory's counsel indicates that he would have pursued a different strategy had he been representing her at the time, he does not question the fairness of the Board's hearing.

*Emory*, 514 S.W.3d at 150-51.

In declining to overturn the school board's decision, the *Emory* Court highlighted the importance of providing an administrative tribunal the opportunity to correct its own procedural errors without the trial court usurping the agency's function. *See id*. at 152 ("The administrative tribunal, like the trial court, must be given the opportunity to correct procedural errors." (citing *Bailey*[ *v. Blount Cnty. Bd. of Educ.*], 303 S.W.3d [216,] 237 [(Tenn. 2010)])) (internal quotation marks and citation omitted). The *Emory* Court also cited to *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946), in which the United States Supreme Court cautioned: "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *See id.*

In the case at bar, we are similarly reluctant to usurp the Board's function by considering procedural issues that were not brought before the Board in the first instance. As the teacher in *Emory* failed to raise the timeliness issue before the administrative board, Ms. Vaught failed to raise the defenses of *res judicata* and collateral estoppel before the Board in this case. Instead, Ms. Vaught presented these defenses for the first time in her petition for judicial review, despite having had ample time to raise them during the administrative proceedings. The record indicates that Ms. Vaught received a notice of the hearing and charges from the Department relative to the instant matter on September 27, 2019, and the hearing was conducted by the Board nearly two years later, on July 22 and 23, 2021. Ms. Vaught was represented by counsel for most of the intervening months, through whom she filed multiple pre-trial motions and participated in discovery, yet Ms. Vaught did not present the defenses of *res judicata* or collateral estoppel in any of her written motions or petitions during that time. Additionally, Ms. Vaught was afforded ample opportunity to put on proof, call witnesses, testify on her own behalf, cross-examine the Board's witnesses, and present her theories of the case before the Board during the two-day hearing in July 2021, but she did not present the affirmative defenses at any time during the hearing.

Instead, Ms. Vaught made the defenses of *res judicata* and collateral estoppel the "centerpiece of her argument" for the first time in her petition for judicial review, despite

- 10 -

her failure to reference them before or during the Board hearing. *See Emory*, 514 S.W.3d at 150. As the *Emory* Court explained:

> The efficient and fair administration of justice demands that a litigant not be permitted to withhold her objections, await the outcome, and then complain that she was denied her rights if she does not approve of the resulting decision. *See Bailey*, 303 S.W.3d at 237 (quoting *McClellan*[ *v. Bd. of Regents of State Univ.*], 921 S.W.2d [684,] 690 [(Tenn. 1996)] ("'Allowing parties to acquiesce in the procedures, but to challenge those same procedures on appeal is inefficient and unreasonable.'"); *Dragan v. Connecticut Med. Examining Bd.*, 223 Conn. 618, 613 A.2d 739, 747 (1992) (citations and internal quotation marks omitted) ("A party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that were not asserted before the board. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial."). Allowing a party to hide an ace up her sleeve for appeal would undermine fair play and finality of judgment. In contrast, our reaffirmed insistence upon contemporaneous objections to agency errors should provide incentive for litigants to see that all procedural deficiencies are addressed before the administrative body completes its consideration of a dispute. *See City of Brentwood*[ *v. Metro. Bd. of Zoning Appeals*], 149 S.W.3d [49,] 55 [(Tenn. Ct. App. 2004)] (citing *McClellan*, 921 S.W.2d at 690) ("Parties to administrative proceedings must raise all objections to procedural errors during the hearing in order to preserve these questions for later appellate review.").

*Emory*, 514 S.W.3d at 152.

As reviewed above, Ms. Vaught had ample opportunity to raise the defenses of *res judicata* and collateral estoppel before the Board during the two-day hearing and at any time in a responsive pleading or motion before the hearing, but she failed to do so. Moreover, by participating in the full hearing before the Board, Ms. Vaught consented to the hearing on the substantive matters of the complaint that had been brought against her. Ms. Vaught should not have been permitted to raise these defenses for the first time in her petition for judicial review. Accordingly, we reverse the trial court's determination concerning waiver and find that Ms. Vaught waived the affirmative defenses of *res judicata* and collateral estoppel by failing to raise them during the administrative proceedings.

- 11 -

### V. Dr. Bosen's Letter

Ms. Vaught also argues that the Board's decision to revoke her nursing license was "flawed and unfairly prejudicial" and based upon "incomplete findings, inferences, conclusions and decisions contained in an incomplete record." Ms. Vaught focuses this portion of her argument on a letter written by Dr. Bosen and transmitted to the sentencing judge in the related criminal case on May 6, 2022, nine months after the conclusion of the hearing before the Board.

During the Board hearing, Dr. Bosen had testified concerning the nature of the medications, Vecuronium and Versed, and had described the common practices associated with using automated dispensing cabinets like the one used by Ms. Vaught to administer the medicine to the decedent patient. Dr. Bosen had also testified during the related criminal court proceedings. After Ms. Vaught was convicted through the criminal court proceedings, Dr. Bosen authored a letter urging the criminal court "to offer grace in sentencing to Ms. Vaught." In the communication, Dr. Bosen conceded that Ms. Vaught had erred in administering the wrong medicine to the decedent but presented several reasons why, in Dr. Bosen's opinion, Ms. Vaught's actions had not amounted to "intentional neglect."

When Ms. Vaught became aware of the letter that Dr. Bosen had sent to the criminal court judge, she filed a motion in the trial court to remand the matter of her nursing license revocation to the Board so that the Board could reconsider its decision predicated upon what she described as the "newly discovered evidence" in the letter. The trial court declined to remand the case to the Board and instead treated Ms. Vaught's motion to remand as a motion seeking leave to present the letter as additional evidence pursuant to § 4-5-322(e) (West May 18, 2021, to current) of the UAPA.[3] The section provides:

> If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings or decisions with the reviewing court.

Following a hearing on the motion, the trial court entered an order on September

---

[3] In declining to remand the case to the Board, the trial court relied on § 4-5-322(h) to determine that the subsection did "not provide a vehicle for Petitioner to seek a remand to the agency prior to the final hearing." On appeal, Ms. Vaught does not contest the trial court's decision not to remand to the Board prior to the final hearing.

13, 2022, declining to remand or allow Ms. Vaught to present the letter before the Board as additional evidence. The trial court determined that (1) the contents of the letter were not material to the Board's decision to revoke Ms. Vaught's license and (2) Ms. Vaught had failed to show good reason for not presenting the substance of the letter as additional evidence during the administrative proceeding. *See* Tenn. Code Ann. 4-5-322(e). As the trial court explained in its order:

> [S]everal witnesses testified during the hearing before the Board about the features of the automated medication dispensing system, and the Board considered this testimony in making its decision. Thus, the information contained in [Dr. Bosen's] letter would not have affected the merits of the Board's decision, particularly in light of the Board's reliance on [Ms. Vaught's] admissions before the Board that she did not read the label to verify the medication dispensed. *Story v. Civil Serv. Comm'n*, No. M2010-01214-COA-R3-CV, 2011 WL 2623904, at *10 (Tenn. Ct. App. Jul. 5, 2011). Further, even if the information in [Dr. Bosen's] letter were material, the Court finds [Ms. Vaught] failed to establish good reasons for failing to present that information during the administrative hearing. Dr. Bosen testified as a witness before the Board and [Ms. Vaught's] counsel cross-examined her. In addition, [Ms. Vaught] had the opportunity to conduct discovery and depose Dr. Bosen before the administrative hearing, but chose not to do so.

The trial court reiterated this reasoning in its final order respecting Ms. Vaught's petition for judicial review and concluded that the Board's "failure to consider a letter that had not yet been written" did not constitute "unlawful procedure," as Ms. Vaught had asserted. The trial court stated that "Ms. Vaught chose not to use the available discovery tools through which she could have elicited Dr. Bosen's testimony in the administrative proceedings[.]"

We agree with the trial court's reasoning. In the letter to the criminal court judge, Dr. Bosen explained how "confirmation bias" may have contributed to Ms. Vaught's administration of the wrong medication after using the "override" feature on the automatic dispensing machine. Dr. Bosen concluded that such confirmation bias was a "critical piece of the event" that "was never brought up in trial" although Dr. Bosen "desperately wanted it to be." Significantly, Dr. Bosen did not state in the letter that this information was newly discovered; she simply stated that it was not "brought up in trial."

Upon careful review, we find that the information contained in Dr. Bosen's letter could have been elicited through Dr. Bosen's testimony during the Board hearing or through depositions, but was not. Ms. Vaught had a full opportunity to cross-examine Dr. Bosen during the hearing regarding the features of and usual practice concerning the automatic dispensing machine, as well as Dr. Bosen's opinions concerning "confirmation

- 13 -

bias," but she failed to do so. In sum, the letter did not present "newly discovered" evidence that was not available during the administrative proceedings. Therefore, the Board's decision to revoke Ms. Vaught's license was not based upon an incomplete record, as Ms. Vaught argues. We further conclude that the administrative proceedings were not unfairly prejudicial to Ms. Vaught simply because she failed to elicit supportive testimony from Dr. Bosen or others that was available throughout. We also do not discern any unlawful procedure on the part of the Board in conducting the administrative proceedings and Ms. Vaught presents none on appeal.

Finally, we agree with the trial court that even had Dr. Bosen's letter been presented to the Board—which was an impossibility because it was written several months after the Board hearing concluded—such information would not have succeeded in overcoming Ms. Vaught's own admission that she had failed to check the medication before administering it to the patient. During her testimony before the Board, Ms. Vaught explained that she had been "distracted" when she retrieved the medication from the dispensing machine and that she "didn't think to double-check" what she "thought" she had "pulled from the machine." When asked why she did not read the "label front" of the medication, Ms. Vaught explained that nurses can "get complacent in our practice when things get busy[.]" Ms. Vaught then concluded: "And so it was completely my fault that I didn't check [the medication vial]." Upon review of this testimony and in consideration of the record as a whole, we determine that the evidence preponderates in favor of the Board's decision to revoke Ms. Vaught's nursing license. *See* Tenn. Code Ann. § 4-5-322(h)(5)(B)(i). We accordingly decline to disturb the trial court's ruling affirming the Board's decision.

## VI. Conclusion

For the foregoing reasons, we determine that Ms. Vaught waived the affirmative defenses of *res judicata* and collateral estoppel through her failure to raise those doctrines before the Board in the first instance. We accordingly reverse the trial court's determination relative to that issue. In all other respects, we affirm the trial court's November 27, 2023 order upholding the Board's decision to revoke Ms. Vaught's nursing license. The case is remanded to the trial court for further proceedings consistent with this Opinion and collection of costs assessed below. Costs on appeal are assessed to the appellant, Radonda Vaught.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE

- 14 -