IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 4, 2023 Session

## LOU ANN ZELENIK v. CROWELL HOMEBUILDING, LLC ET AL.

**Appeal from the Chancery Court for Rutherford County**
**No. 17CV-849      L. Craig Johnson, Judge[1]**

_____

**No. M2021-00735-COA-R3-CV**

_____

A buyer signed an agreement with a contractor for the construction of a custom home. After disagreements arose over the construction and its pace, the buyer sued the contractor and its owner seeking damages and to quiet title to the property. The trial court awarded the buyer damages, title to the property, and attorney's fees and costs. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and THOMAS R. FRIERSON II, JJ., joined.

Kirk D. Catron, Murfreesboro, Tennessee, for the appellants, Crowell Homebuilding, LLC and Jeffrey Crowell.

Joshua A. Jenkins, Murfreesboro, Tennessee, for the appellee, Lou Ann Zelenik.

## OPINION

### I.

### A.

Sometime in 2015, Lou Ann Zelenik began discussions with Jeffrey Crowell about having his company, Crowell Homebuilding, LLC, build her a home. The home was to be constructed on a 7.6-acre property in Smyrna, Tennessee, which Ms. Zelenik had

---

[1] Judge L. Craig Johnson of the Fourteenth Judicial District heard the case by interchange. *See* Tenn. Code Ann. § 17-2-202 (2021).

purchased earlier in the year for $140,500. In December 2015, Ms. Zelenik transferred the Smyrna property to Crowell Homebuilding by quitclaim deed for a stated consideration of $10. The parties intended for the property to serve as collateral for a construction loan to be taken out by Crowell Homebuilding; the loan proceeds would be used to build Ms. Zelenik's new home.[2]

In March 2016, Ms. Zelenik and Mr. Crowell on behalf of Crowell Homebuilding signed a two-page "New Construction Contract." Under the contract, Crowell Homebuilding agreed to construct a new home "as per plans" on the Smyrna property, and Ms. Zelenik agreed to purchase the property for $550,000. The contract specified that the closing would take place on October 1, 2016, and that possession would be given with the deed. The contract further acknowledged that "[t]ime is of the essence."

A few days later, Crowell Homebuilding and First National Bank of Middle Tennessee signed a Construction Loan Agreement. The agreement authorized a loan of up to $420,000 to be used solely for improvements to the Smyrna property. Crowell Homebuilding also signed a promissory note in favor of the bank and a deed of trust granting the bank a security interest in the Smyrna property.

Work began on the new home, but issues soon arose. According to Mr. Crowell, the issues stemmed, at least in part, from the plans referred to in the parties' contract. He claimed that the plans, drafted by another company, were incomplete. As a result, the construction was slowed by having to wait on Ms. Zelenik to make decisions about materials and design details not reflected in the plans. And the parties had different views about the suppliers for the project. Mr. Crowell contended that Ms. Zelenik's choices often resulted in costs that exceeded what he budgeted for the project. Ms. Zelenik also wanted the home built in a different location on the property than he had planned. Mr. Crowell later testified that the final location had a severe slope resulting in even more unplanned costs.

Both parties acknowledged that work was performed outside the scope of the parties' contract. Work on the home went beyond or differed from what the plans specified. And Crowell Homebuilding did work on a preexisting, detached garage on the Smyrna property that was never part of the contract. Ms. Zelenik claimed that Mr. Crowell did not inform her when her decisions would result in extra costs. She anticipated that work on the detached garage would be covered under a separate contract.

---

[2] The reason for this unusual arrangement was disputed. Ms. Zelenik claimed that Mr. Crowell suggested it, purportedly so that he could leverage a banking relationship for favorable financing terms or perhaps lower closing costs. The arrangement also allowed her to delay selling her current home until after construction was complete; she planned to use the proceeds from the sale to pay for her new home. Mr. Crowell claimed the arrangement arose from Ms. Zelenik's distrust of banks and unwillingness to obtain financing on her own.

As the October 1, 2016, deadline for completion of the home came and went, the parties continued to work together despite the issues. Ms. Zelenik made payments to Crowell Homebuilding of $40,000 and $50,000 in early 2017. Including her original earnest money deposit, this brought her total payments to $110,000. But the question of payment for work outside the contract or beyond what Mr. Crowell had budgeted came to a head on April 13, 2017, when he walked off the job. At that point, he had exhausted the draws he could make under the construction loan based on progress of the work. Mr. Crowell estimated that the home was 88 percent complete when he quit.

B.

Ms. Zelenik sued Crowell Homebuilding and Mr. Crowell. The final version of her complaint asserted seventeen separate counts, including claims for breach of contract, violations of the Contractor's Licensing Act and Tennessee Consumer Protection Act ("TCPA"), and to quiet title to the property. Crowell Homebuilding and Mr. Crowell counterclaimed, asserting breach of contract and claims of negligent misrepresentation, quantum meruit, and unjust enrichment.

Ms. Zelenik moved for partial summary judgment on several of her claims. Among other things, she contended that the undisputed facts established that Crowell Homebuilding and Mr. Crowell were the first to materially breach the construction contract. She pointed to several facts as establishing a breach, including the failure to deliver the property as required by the contract, unauthorized draws against the construction loan, and the monetary limit on the contractor's license held by Crowell Homebuilding. Regarding the contractor's license, which had a monetary limit of $250,000, Ms. Zelenik argued that, "[u]nquestionably, Defendants' possession of a contractor's license with a sufficient monetary limit is a material term [of the construction contract]." She also argued that, "[b]y offering, bidding, [and] entering into a construction agreement" for $550,000 and "by performing construction service in excess of [its] monetary limit," Crowell Homebuilding "committed a *per se* violation of the [TCPA]."

Another aspect of the motion for partial summary judgment concerned the priority of interests in the property. During the case, the Construction Loan Agreement and the promissory note held by First National Bank of Middle Tennessee went into default, and the unfinished home and the property were placed into a receivership.[3] Ms. Zelenik purchased the loan, making her the beneficiary of the deed of trust on the property. *See W.C. Early Co. v. Williams*, 186 S.W. 102, 103-04 (Tenn. 1916) (holding that a deed of trust securing a promissory note passes to a transferee of the note). Around the time that Ms. Zelenik acquired the promissory note, Crowell Homebuilding recorded a

---

[3] There are some indications in the record that Crowell Homebuilding was placed into receivership as well. For example, the receiver signed a restated and renewal promissory note in favor of the bank "in his official capacity as Receiver for Crowell Home Building, LLC."

materialmen's lien on the property. *See* Tenn. Code Ann. § 66-11-102 (2022). So Ms. Zelenik's motion sought a declaration that her interest in the property had priority over Crowell Homebuilding's lien as well as a money judgment for the outstanding balance due under the promissory note.

The court heard the motion for partial summary judgment on the first day scheduled for the trial. It took the matter under advisement and delayed the start of the trial. When the court ruled the next day, it determined that Crowell Homebuilding and Mr. Crowell improperly "pulled off the job without compensation" to Ms. Zelenik, leaving her without "anything to show for the substantial amount of money she had invested," and "fail[ed] to deliver completion by the agreed upon date." But ultimately the court agreed that "being underlicensed . . . [wa]s the first material breach." Thus, it concluded that Crowell Homebuilding and Mr. Crowell were liable to Ms. Zelenik for damages and that Crowell Homebuilding's potential recovery was limited to any actual documented expenses that could be shown by clear and convincing proof. *See id.* § 62-6-103(b) (2019). Second, the court concluded that insufficient licensing was a per se violation of the TCPA. Third, because Ms. Zelenik had purchased the construction loan from the bank, it concluded that her interest in the property by virtue of the deed of trust had priority over all other interests. However, the court did grant a judgment on the promissory note.

The day after the partial summary judgment ruling, the trial commenced, with the court hearing testimony over four days. Following the trial, the court granted a judgment in favor of Ms. Zelenik and against Crowell Homebuilding and Mr. Crowell in the amount of $158,138 on her claim for breach of the construction contract. The judgment amount represented the costs to complete construction of the home according to the plans and for final grading plus hotel expenses incurred by Ms. Zelenik and one-half the amount paid for mold remediation at the home.

The judgment also awarded Ms. Zelenik title to the property. And it declared the property was free and clear of any liens, including the materialmen's lien asserted by Crowell Homebuilding. The court reserved the issue of attorney's fees, but it did not grant Ms. Zelenik any other requested relief. The court dismissed the counterclaims of Crowell Homebuilding and Mr. Crowell.

Later, Ms. Zelenik moved for attorney's fees, expenses, and discretionary costs. Crowell Homebuilding and Mr. Crowell opposed the requests. Among other things, they argued that an award of attorney's fees under the construction contract was improper because "the contract itself was found to have been illegal and invalid from the outset, and therefore, the attorney fee provision would not apply." And, even if the construction contract was valid, recovery of attorney's fees was limited to the "prevailing party." They argued that Ms. Zelenik was not the prevailing party because she only received relief on three of the seventeen counts of her complaint.

4

The court awarded Ms. Zelenik $63,678.67 in attorney's fees and $1,958.50 in discretionary costs. It determined that she was the prevailing party and concluded that an award of attorney's fees was mandatory under the default provision of the construction contract. The court also determined an award of attorney's fees was appropriate under the TCPA. *See id.* § 47-18-109(e)(1) (Supp. 2024) (authorizing an award of attorney's fees and costs upon a finding that the TCPA had been violated).

## II.

Crowell Homebuilding and Mr. Crowell raise five issues for our review. The first two relate to the court's grant of partial summary judgment. The third challenges the dismissal of their unjust enrichment and quantum meruit claims. And their last two issues relate to attorney's fees and discretionary costs. For her part, Ms. Zelenik challenges the finding that Crowell Homebuilding and Mr. Crowell acted in good faith and the trial court's failure to award treble damages for her TCPA claim. And she contends that the construction contract and the TCPA entitle her to attorney's fees and costs incurred on appeal.

### A.

In the grant of partial summary judgment, Crowell Homebuilding and Mr. Crowell assert the court erred in two ways. First, they argue that the construction contract was ambiguous and thus not a valid, enforceable contract. So the court should not have found a breach of contract. Second, they argue that, even if the contract was valid and enforceable, Crowell Homebuilding should not be considered unlicensed or underlicensed. They further claim that the grant of partial summary prevented them from a full and fair opportunity to litigate all issues at trial.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). It presents a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. So we review the record de novo and make a fresh determination of whether the requirements of the Tennessee Rule of Civil Procedure governing summary judgment have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763. Under that rule, Rule 56, summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

When the moving party bears the burden of proof at trial, "that party must produce at the summary judgment stage evidence that, if uncontroverted at trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). If the moving party satisfies its burden, "the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Byrd*, 847 S.W.2d at 211; *see TWB Architects*, 578 S.W.3d at 888. In reviewing the record, we "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd*, 847 S.W.2d at 210-11.

1. Contract Validity and Enforceability

One of the essential elements of a breach of contract claim is "the existence of an enforceable contract." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (quoting *Custom Built Homes v. G.S. Hinsen Co.*, No. 01A01-9511-CV-00513, 1998 WL 960287, at *3 (Tenn. Ct. App. Feb. 6, 1998)). Crowell Homebuilding and Mr. Crowell submit that the construction contract was so ambiguous that it could not be enforced as a valid contract. Ms. Zelenik counters that this argument was waived because it was not raised in the trial court. Issues not raised in the trial court may be deemed waived on appeal. *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 300 (Tenn. 2020).

We conclude the issue was waived. In pleadings and at trial, Crowell Homebuilding and Mr. Crowell "admit[ted] the parties entered into a contract." And they raised their own breach of contract claim against Ms. Zelenik. In response to Ms. Zelenik's motion for partial summary judgment, Crowell Homebuilding and Mr. Crowell again admitted the contract's existence and failed to challenge its validity or enforceability.[4] Only when Ms. Zelenik made her request for an award of attorney's fees following the trial and entry of the judgment awarding breach of contract damages did they submit that the contract was invalid. Raising the issue at that stage of the proceeding was too late. *See In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn. 2001) (commenting that "there is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all").

2. The Contractor's Licensing Act

Crowell Homebuilding and Mr. Crowell argue that, even if the contract is valid and enforceable, the trial court should have found the Contractor's Licensing Act inapplicable

---

[4] Once during argument on the motion for partial summary judgment, Crowell Homebuilding and Mr. Crowell claimed that the construction contract "was arguably invalid," but the argument was not developed beyond that statement.

6

in this circumstance. Tenn. Code Ann. §§ 62-6-101 to -139 (2019 & Supp. 2024). The Act makes it "unlawful . . . to engage . . . in contracting . . . , unless, at the time of such engagement . . . , the person, firm, or corporation has been duly licensed with a monetary limitation sufficient to allow the person, firm, or corporation to engage . . . in such contracting project." *Id.* § 62-6-103(a)(1). The parties agree that the monetary limit associated with Crowell Homebuilding's license was insufficient for Ms. Zelenik's project. Still, Crowell Homebuilding and Mr. Crowell submit that the Act only protects against unlicensed contractors, as opposed to underlicensed contractors. And the Act's protections do not extend to Ms. Zelenik because she "is experienced in contracting, construction, and property development and is a knowledgeable professional."

The plain language of the Act disproves the first argument. A contractor must be "duly licensed <u>with</u> a monetary limitation sufficient to allow the person, firm, or corporation to engage in or offer to engage in such contracting project." *Id.* (emphasis added). In determining the Act's applicability, this Court has previously found a significant "distinction between unlicensed contractors and contractors bidding above the monetary amount of their license." *Anchor Pipe Co. v. Sweeney-Bronze Dev., LLC*, No. M2011-02248-COA-R3-CV, 2012 WL 3144638, at *4 (Tenn. Ct. App. Aug. 2, 2012). But we were interpreting an earlier version of the Act, which applied to "[a]ny unlicensed contractor." *Id.* at *3 & n.2 (noting that a prior version of the statute applied); *see also* Tenn. Code Ann. § 62-6-103(a)(1) (2009) (requiring contractors to "ha[ve] been duly licensed" without reference to monetary limits). Under that version of the Act, monetary limit violations were addressed by regulation rather than in the Act itself. *Anchor Pipe Co.*, 2012 WL 3144638, at *4. At the time these parties contracted, the Act expressly required sufficient monetary limits, which Crowell Homebuilding did not possess.

The second argument was not made in response to the motion for partial summary judgment. And Crowell Homebuilding and Mr. Crowell did not include information regarding Ms. Zelenik's experience and professional background among the additional facts they asserted were material to the trial court's decision on the motion. *See* TENN. R. CIV. P. 56.03. So we consider the argument of whether the protection of the Act extends to Ms. Zelenik waived.

3. Full and Fair Opportunity to Litigate

Crowell Homebuilding and Mr. Crowell complain that the grant of partial summary judgment placed them at a disadvantage at trial. They argue that they did not have "a full and fair opportunity to litigate both the claims alleged against them, but also the counterclaims [they] asserted against Ms. Zelenik."[5] But that is what the summary

_____

[5] To the extent Crowell Homebuilding and Mr. Crowell argue that the timing of the grant of partial summary judgment was prejudicial, we discern no basis for relief. They did not request a continuance of

7

judgment process is designed to do. It "provide[s] a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no genuine dispute regarding material facts." *Byrd*, 847 S.W.2d at 210. Much of the grant of partial summary judgment followed from the undisputed fact that the monetary limitation on Crowell Homebuilding's license was less than the cost of the project. The trial court determined that the insufficiency of the monetary limit had three consequences. First, it represented the first material breach of the construction contract. Second, because it also represented a violation of the Contractor's Licensing Act, it limited Crowell Homebuilding's potential recovery, and finally, it was a per se violation of the TCPA.

We conclude that the court erred in designating the insufficient monetary limit as the first material breach of the construction contract. A breach of contract is a "[v]iolation of a contractual obligation." *Breach of Contract*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also McClain v. Kimbrough Constr. Co.*, 806 S.W.2d 194, 199 (Tenn. Ct. App. 1990) (reasoning "[o]nly [one party's] uncured material failure to perform its own contractual obligations would have excused [the other party] from performing its remaining obligations"). The requirement that a contractor's license have "a monetary limitation sufficient to allow the person, firm, or corporation to engage in [the] contracting project" is a statutory obligation. Tenn. Code Ann. § 62-6-103(a)(1). The construction contract imposed no obligation regarding licensure.

Although the court erred in identifying the first material breach, in granting partial summary judgment, it concluded that the undisputed facts established at least two breaches of the construction contract. The court determined that the contract was breached when Crowell Homebuilding and Mr. Crowell stopped work on the project and when they failed to transfer title to property back to Ms. Zelenik on the contractually specified closing date. These determinations have not been challenged on appeal, and we conclude that either breach supports imposing liability for breach of the construction contract.[6]

The other consequences specified by the trial court are supported by statute. Under the TCPA, "[r]epresenting that a person is a licensed contractor when such person has not been licensed as required by [the Contractor's Licensing Act]" is deemed an "unfair or deceptive act[] or practice[]" and a violation of the TCPA. *Id.* § 47-18-104(b)(35) (2013); *see also id.* § 62-6-136(b) (2019). Additionally, a contractor who is in violation of the

---

the trial after the grant of summary judgment. Instead, after their counsel asked the court several questions about the scope and consequences of the ruling and a break in the proceedings was granted so that counsel could confer with the clients, the proof proceeded without objection. *See* TENN. R. APP. P. 36(a) advisory comm'n cmt. (recognizing that the rules of appellate procedure incorporate "the accepted principle that a party is not entitled to relief if the party invited error, waived an error, or failed to take whatever steps were reasonably available to cure an error").

[6] The court determined that both Crowell Homebuilding and Mr. Crowell breached the construction contract. Mr. Crowell does not challenge the determination that he was a party to the contract.

Contractor's Licensing Act is not "permitted to recover any damages [. . .] other than actual documented expenses that can be shown by clear and convincing proof." *Id.* § 62-6-103(b).

B.

Beyond the grant of partial summary judgment, the parties also raise issues with the court's decision following the trial. Crowell Homebuilding and Mr. Crowell argue that the court erred in dismissing their unjust enrichment and quantum meruit claims. Ms. Zelenik argues the court erred in not awarding treble damages under the TCPA.

Because this was a bench trial, our review of these issues is de novo on the record with a presumption that the trial court's factual findings are correct, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d). We review questions of law de novo with no presumption of correctness. *Emory v. Memphis City Schs. Bd. of Educ.*, 514 S.W.3d 129, 142 (Tenn. 2017).

1. Unjust Enrichment and Quantum Meruit

Crowell Homebuilding and Mr. Crowell claim they provided extra goods and services that were outside what was contemplated in the original plans referenced in the construction contract without compensation. They seek recovery for these goods and services based on unjust enrichment or quantum meruit theories. "Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist." *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) (citing *Paschall's Inc. v. Dozier*, 407 S.W.2d 150, 154-55 (Tenn. 1966)). Quantum meruit "is an equitable substitute for a contract claim pursuant to which a party may recover the reasonable value of goods and services provided to another" under certain circumstances. *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 197-98 (Tenn. 2001). Although the claims are "essentially the same," they are not exactly so, and they have different elements. *Fam. Tr. Servs. LLC v. Green Wise Homes LLC*, 693 S.W.3d 284, 305 (Tenn. 2024) (quoting *Paschall's Inc.*, 407 S.W.2d at 154).

The problem with both claims, as the trial court identified, is that Crowell Homebuilding did not comply with the Contractor's Licensing Act. A contractor who does not "maintain a valid license for the duration of the contract" may not recover under either unjust enrichment or quantum meruit theories. *Kyle v. Williams*, 98 S.W.3d 661, 665 (Tenn. 2003). We conclude that the same is true for a contractor who does not maintain "a monetary limitation sufficient to allow the person, firm, or corporation to engage in or offer to engage in [the] contracting project." Tenn. Code Ann. § 62-6-103(a)(1). So, the unjust

9

enrichment or quantum meruit claims of Crowell Homebuilding and Mr. Crowell were properly dismissed.[7]

2. Treble Damages

Ms. Zelenik asserts that the court erred in not awarding treble damages under the TCPA. A court may award three times actual damages if it "finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation" of the TCPA. *Id.* § 47-18-109(a)(3). In deciding whether such an award is appropriate, the court may consider, among other things, "[t]he good faith of the person" found to have committed the unfair or deception act or practice. *Id.* § 47-18-109(a)(4). Here, despite not complying with Contractor's Licensing Act, the court found that Crowell Homebuilding and Mr. Crowell acted in good faith. Ms. Zelenik contends that the evidence preponderates against that finding. She also contends that other relevant statutory factors favor an award of treble damages.

Based on our review of the record, the trial court did not err in declining to award treble damages. One of the statutory factors is "[t]he competence of the consumer." *Id.* § 47-18-109(a)(4)(A). The proof at trial showed that Ms. Zelenik was not an unsophisticated consumer, and as she concedes in her brief, she "ha[d] some historical experience in the construction industry."[8] These facts weigh against an award of treble damages. "The nature of the deception or coercion practiced upon the consumer" also militates against the award of treble damages. *Id.* § 47-18-109(a)(4)(B). The requirement that a contractor's license have a sufficient monetary limit to cover the cost of the project "afford[s] financial security to owners, vendors and others dealing with a contractor." *Helton v. Angelopoulos*, 629 S.W.2d 15, 18 (Tenn. 1982). Here, Crowell Homebuilding assumed much of the financial risk by taking out a loan for most of the cost of the construction. The damage to Ms. Zelenik was not insignificant, but the length of time it took to complete construction increased the damages. *See* Tenn. Code Ann. § 47-18-109(a)(4)(C). The court found "both sides caused . . . delays in construction." Damages were also influenced by the time it took the case to come to trial. Finally, the evidence does not preponderate against the court's finding that Mr. Crowell acted in good faith. *See id.* § 47-18-109(a)(4)(D). So all the statutory factors weighed against treble damages.

C.

The trial court awarded attorney's fees to Ms. Zelenik under both the construction contract and the TCPA. *See Cracker Barrel Old Country Store, Inc. v. Epperson*, 284

---

[7] On appeal, Crowell Homebuilding and Mr. Crowell do not argue that they offered clear and convincing proof of actual documented expenses. *See* Tenn. Code Ann. § 62-6-103(b).

[8] According to her deposition testimony, Ms. Zelenik founded a heavy construction company, which remained in business for 25 years.

S.W.3d 303, 308 (Tenn. 2009) (recognizing a party to a civil action may recover attorney's fees under "a contractual or statutory provision"). The contract provided that "the prevailing party shall be entitled to recover all costs [of enforcement], including attorney fees and expenses as determined by the court." Upon a finding that the TCPA has been violated, "the court may award to the person bringing [an] action reasonable attorney's fees and costs." Tenn. Code Ann. § 47-18-109(e)(1). The court also awarded Ms. Zelenik her discretionary costs. *See* TENN. R. CIV. P. 54.04.

Crowell Homebuilding and Mr. Crowell claim that the award of attorney's fees and discretionary costs was error because the grant of partial summary judgment and the ruling following trial were error. They note that both an award of attorney's fees under the contract and an award of discretionary costs under Tennessee Rule of Civil Procedure 54.04(2) require prevailing party status. Here, we agree with the trial court that Ms. Zelenik was a prevailing party for purposes of the contract and the rule. *See Fannon v. City of LaFollette*, 329 S.W.3d 418, 431 (Tenn. 2010) (recognizing a prevailing party "is one who has succeeded 'on any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983))). And we discern no error in the trial court's award of attorney's fees and discretionary costs.

All parties request an award of attorney's fees on appeal.[9] Crowell Homebuilding and Mr. Crowell make their request under the contract. Ms. Zelenik makes her request under the contract and the TCPA. When a request for attorney's fees is "under both contractual and statutory authority, our courts . . . look to the parties' contract first before moving on to any discretionary analysis under statutes." *Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017). So the starting place is the construction contract, which mandates an award of attorney fees and expenses to the prevailing party. Because Ms. Zelenik is the prevailing party on appeal, she is entitled to reasonable attorney's fees and expenses incurred in this appeal; Crowell Homebuilding and Mr. Crowell are not.

An award of attorney's fees under the TCPA is a matter of this Court's discretion. *See* Tenn. Code Ann. § 47-18-109(e)(1); *Killingsworth v. Ted Russell Ford, Inc.*, 205

---

[9] Ms. Zelenik contends that Crowell Homebuilding and Mr. Crowell waived their request for attorney's fees on appeal by failing to designate the request as an issue in their statement of issues. *See Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 410-11 (Tenn. 2006) (holding "[a] claim for appellate attorney's fees is an issue that should be set before the appellate court because a remand to the trial court is not a foregone conclusion"). Rather than designating their request for attorney's fees on appeal as an issue in their statement of issues, Crowell Homebuilding and Mr. Crowell repeat their issue with the trial court's award of attorney's fees and discretionary costs twice. Their request for attorney's fees on appeal is argued in their brief, and Ms. Zelenik addresses the argument. Under these unique circumstances, we reach the merits of the request. *See* TENN. R. APP. P. 1 (providing that the Tennessee Rules of Appellate Procedure are to "be construed to secure the just, speedy, and inexpensive determination of every proceeding on its merits").

S.W.3d 406, 410 (Tenn. 2006). Exercising our discretion, we decline to award attorney's fees under the TCPA.

## III.

We affirm the trial court grant of partial summary judgment, the judgment following trial, and the award of attorney's fees, expenses, and discretionary costs. Ms. Zelenik is awarded attorney's fees and expenses incurred on appeal. We remand this case to the trial court for a determination of Ms. Zelenik's reasonable attorney's fees and costs incurred on appeal and for such further proceedings as may be necessary and consistent with this opinion.

_____s/ W. Neal McBrayer_____
W. NEAL MCBRAYER, JUDGE